## James S. Dwen, Executor, etc., *et al.*

### *v.*

## Thatcher Blake, Executor, etc.

1. MORTGAGE — *what constitutes* — *intention of parties governs.* To ascertain whether a transaction between parties amounts to a sale or a mortgage, courts of equity will look beyond the mere forms with which it is clothed, and although it be a sale in form, if it clearly appears by proof to have been a loan or debt and security for its payment, it will be treated as a mortgage.

2. SAME — *when in form a sale* — *proof must be clear to change its character.* Where parties give to a transaction all the forms of a sale, the proof must be clear that it was intended as a mortgage, in order to change its character. Slight, indefinite evidence is not sufficient.

3. SAME — *what will be considered* a *mortgage.* T., desirous of entering certain lands, applied to M., an agent of G., for the purchase of land warrants, for such purpose ; whereupon an agreement was made between them, whereby, M. sold to him certain warrants, for which T. executed to him his notes for the purchase price, the payment of which was secured by entering the lands in the name of M., M. giving to T. his bond for the conveyance of the same to him, upon the payment of the notes. T. failed to pay the notes, and G., the principal, having died, M. quitclaimed the lands to G.'s heirs. Subsequently, the premises were sold on execution against T. who was in possession, on a judgment in favor of J., and B. redeemed from the sale, as a judgment creditor of T. On a bill to redeem filed by B., *held*, that the transaction amounted to a sale of the warrants, and the entry of the lands in M.'s name, was intended as a security for the payment of the notes, and must be treated as a mortgage ; that M. held the land in trust for G.'s heirs, subject to T.'s equity of redemption, and that the deed by him to them was without consideration, and received by them merely as such heirs, and not as *bona fide* purchasers ; and that B. by his purchase under J.'s execution succeeded to all of the rights of T.

4. TENDER—*in a bill to redeem*—*not required.* The law does not require a mortgagor to make a tender before he can compel a redemption. He is only required to pay the sum found due by the court, within the time limited by the decree.

5. SAME — *equity not bound by fixed rules* — *concerning the tender of money.* Courts of equity are not bound by any fixed rules in relation to the tender of money, but they will not allow the ends of justice to be perverted or defeated, by the omission of an unimportant or useless act, which nothing but a mere technicality would require.

6. PLEADING IN CHANCERY — *bill to redeem* — *of allegation of tender.* In a bill to redeem, a tender being unnecessary, an allegation in the bill of a tender, unproved, can not defeat the pre-existing right.

WRIT OF ERROR to the Circuit Court of De Kalb county; the Hon. ISAAC G. WILSON, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. HURD, BOOTH & KREAMER, for the plaintiffs in error.

Mr. JAMES M. WIGHT, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a bill in equity filed by Francis Burnap in the Circuit Court of De Kalb, against John S. Green, Mary Ann Green, Elizabeth Green, Adelia Green and Albert G. Green, to redeem certain lands from a mortgage. The bill alleges, that in 1849, Thomas R. Green was engaged in Chicago, in selling and locating land warrants; that Henry A. Mix was his agent in Ogle county, and conducted the business in his own name. In the month of September of that year, Asa Talmadge was desirous of entering the land in dispute, and applied to Mix for the purchase of land warrants for the purpose. That he sold to Talmadge warrants for three hundred and sixty acres for the sum of $432.25, to be paid in one year. That to secure the payment the warrants were located in the name of Mix, who gave to Talmadge two bonds for conveyances of the lands by warranty deeds, upon the payment of the several installments with interest, the last falling due one year from the

15th of September, 1849, for which Talmadge gave his notes. The bonds recite a sale of the lands.

In the month of October, 1849, Talmadge paid on the note first maturing, $145. Between that time and the 18th of June, 1852, Green died, leaving the defendants his heirs at law. That John S. Green was appointed administrator. Mix delivered the notes to him, and conveyed the lands by a quitclaim deed to the heirs of Green, on the 1st day of June, 1852. That Albert G., on the 21st of August, 1852, conveyed his interest in the lands by quitclaim deed to John S. Green. These deeds were duly recorded in that year.

Talmadge recorded his bonds on the 31st of January, 1854, but that there was a mistake in recording. That by mistake the bonds described the lands as being in range three east of the fourth, instead of the third, meridian. That on the 27th of February, 1854, John S., Elizabeth and Adelia E. Green, quitclaimed their interest in part of the lands to Mary Ann Green. And John S., Adelia E. and Mary Ann quitclaimed a part of the lands to Elizabeth Green. And on the 23d of September, 1856, Albert G., Adelia E. and Mary Ann quitclaimed to John S. Green, except one quarter section, which deed was recorded in January, 1858. That in the year 1858, Talmadge tendered to John S. Green, as administrator of Thomas R. Green, the full amount of principal and interest on the notes, and he refused to receive the tender. That he inclosed the premises in 1858, took possession, and retained it ever since.

That on the 4th of September, 1858, all of the premises except forty acres were sold on an execution against Talmadge, on a judgment in favor of Johnson; that Burnap redeemed the lands from that sale under a judgment which he had against Talmadge, and then sold on his execution, became the purchaser, and procured a sheriff's deed for the same; that Mary Ann Green commenced a suit in ejectment in the Circuit Court of the United States against Talmadge to recover the lands, which was still pending when this bill was filed; that the legal title was in Green's heirs; that Talmadge had held

possession, which was notice of his claim. Complainant claims, as the purchaser of Talmadge's title, the right to redeem, and offers to pay the principal and interest on the notes upon being allowed to do so by decree. Prays an account and relief.

John S. Green answered, and denies that Thomas R. Green sold the land warrants, or employed Mix to do so, on credit or otherwise; denies that Mix sold Talmadge any warrants; alleges that when these lands were entered Green was in the business of entering and selling for his own profit, and Mix was employed for a like purpose; that Mix entered the land with warrants which belonged to Green, and in which Talmadge had no interest, and with the understanding and belief that Green should be the purchaser and owner thereof for his sole use and benefit; that after the lands were entered, he admits the bonds were given to convey the same as therein provided; admits the payment on the note; the death of Thomas R. Green; the heirship as stated in the bill, and that respondent became administrator; that Mix conveyed these with other lands to the heirs of Green; denies all knowledge of any claim by Talmadge to the lands; admits the conveyances among the heirs in pursuance to an amicable partition; alleges the death of Elizabeth Green; denies tender by Talmadge, and insists that he had forfeited all rights before Mix conveyed to the Greens, and the contract had been treated as abandoned.

Admits that Mary Ann Green commenced the ejectment suit, as alleged, and charges that she recovered a judgment against Talmadge for the lands; that he has no knowledge of the alleged mistakes, or whether Talmadge had fenced the lands, or that he claimed the lands. Denies all right to redeem. A bill of revivor was subsequently filed against James G. Dwen, executor of John S. Green, who had died after the suit was brought. On the hearing, the court decreed the relief prayed, and this writ of error is brought to reverse the decree.

The tender does not seem to have been proved. The only allegation that is contested, is, whether the charge of a sale of the warrants which the lands were entered with has been

proved. This entire controversy turns on that question. If the warrants were not sold, then the transaction cannot in any sense be regarded as a loan, or an indebtedness, and a security for its payment. On the face of the transaction it is a sale and not a mortgage. But courts of equity will look beyond the forms with which transactions are clothed, to ascertain the true nature of the transaction. And, although it be a sale in form, if it clearly appears to have been a loan or a debt and security for its payment, it will be held and treated as a mortgage. The parties having, however, deliberately given the transaction all of the forms of a sale, slight, indefinite or unsatisfactory evidence should not be permitted to change its character. It should only be by proof which clearly shows that the intention of the parties was that it should be a mortgage and not a sale.

In this case, Mix, who transacted the whole business, and is familiar with the transaction, says that the land warrants were sold and located in his name, which was done at Green's instance, supposing that by that means better prices could be obtained. That Talmadge applied to him for the purchase of the warrants, and on the 15th of September, 1849, he sold him two for 160 acres each. For one he was to pay $156.25 in seventy days; for the other $201.25, in one year. That he gave to witness his notes for those sums; that the notes were to be secured by the location of the warrants in the name of witness. That on the 26th of the same month, he sold to Talmadge a warrant for forty acres for the sum of seventy-five dollars, which was secured in the same way, by the title to the land. That the lands were so entered, and he gave to Talmadge bonds for the conveyance òf the lands, upon payment of the notes. That he only paid sixty-five dollars at one time, and eighty-one dollars at another. That Talmadge never made any tender to him, but, on the contrary, he pressed payment for years without success. That Talmadge came to him, and said he desired to enter the lands, and wished to negotiate with witness to enter them for him. That it was then agreed that witness should make the entries, and give him a contract. That

the notes were given after the entry of the land. That the price was agreed upon before the entry was made, and the notes and bonds given afterward. That the terms were agreed upon before the entry.

Had Mix used money to enter these lands under the same agreement proved in this case, it is not probable that any one would, for a moment, doubt that it was a loan and security for the payment. Nor could any other conclusion be arrived at, if Mix had delivered these warrants to Talmadge and he had made the entries under their agreement. The price of the warrants had been fixed, the time of payment agreed upon, and the mode of securing the payment specified before the entry was made. It appears that the transaction will bear no other construction but that it was a sale of the warrants, and the entry of the land in Mix's name was intended as a security. Mix does not say that he or Green desired the land ; on the contrary they were selling land warrants, and had adopted this mode of securing the payment of their price when sales were made on time, as Mix says they generally were. We are compelled to hold, from the evidence in the case, that the parties intended at the time that this should be a sale of the warrants for the sum for which the notes were given, and the entry of the lands should be as a security for their payment, and in equity it must be treated as a mortgage.

And the maxim, " once a mortgage always a mortgage," must apply in this case. The rights of innocent purchasers or creditors have not intervened. Plaintiffs in error hold as volunteers, and not as *bona fide* purchasers. They paid no consideration but received the conveyance as heirs of Thomas R. Green, for whom Mix held the premises in trust, subject to Talmadge's equity of redemption. The latter, then, had the right to redeem, and Burnap, by his purchase under execution, succeeded to all of his rights. If plaintiffs in error had desired to change the relation of the parties they should have filed their bill to foreclose. But they did not, so far as we can see, even return Talmadge's notes, or give him notice that they considered the contract abandoned, as they allege it was. While that would

not have operated as a foreclosure, it would have shown that they were relying upon an abandonment of the transaction.

It is urged, that there is no evidence of a tender. We do not understand that the law requires a mortgagor to make a tender before he can compel a redemption. All that is necessary is, that he pay the sum found by the court to be due within the time limited by the decree. A court of equity is not bound by any fixed rules in relation to the tender of money, but it will not allow the ends of justice to be perverted or defeated by the omission of an unimportant or useless act, which nothing but a mere technicality could require. *Webster* v. *French,* 11 Ill. 254; *Barnard* v. *Cushman*, 35 id. 451. A tender being unnecessary to give the right, the allegation of the tender unproved could not be held to defeat the previously existing right. The evidence fully sustains the decree of the court below, and it must be affirmed.

*Decree affirmed.*