30      RANSTEAD *v.* OTIS *et al.*      [Sept. T.,

Syllabus.

## BUSHROD W. RANSTEAD

*v.*

## JOSEPH E. OTIS *et al.*

1. MORTGAGOR AND MORTGAGEE—*whether the relation exists—right of redemption.* At a sale of mortgaged premises, under a power in the mortgage, a third person, a stranger to the mortgage, became the purchaser. The mortgagor and the purchaser, both being uncertain as to their rights in the premises, owing to some alleged illegality in the sale, and to settle any question in respect thereto, entered into an arrangement by which the mortgagor executed a quit-claim deed to the purchaser, for a nominal consideration, and received in return a written instrument giving him the option to re-purchase, within a given time, at a price stated. Upon bill filed by the mortgagor, after the time given him to re-purchase had expired, claiming that the sale under the mortgage was illegal and void, and that he still occupied the position of a mortgagor and was entitled to redeem from the purchaser: *Held,* that the transaction between the mortgagor and the purchaser was not a mortgage—the relation of debtor and creditor did not exist between them—and the former had no remaining rights as a mortgagor which would give him any right of redemption.

2. CONSIDERATION—*what sufficient.* The consideration of the quit-claim deed, was the contract, which gave to the mortgagor a certain right of purchase on fair terms, in place of an uncertain right of redemption, depending upon the validity or invalidity of the sale under the mortgage.

WRIT OF ERROR to the Circuit Court of Cook county ; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Mr. ARTHUR W. WINDETT, for the plaintiff in error.

Messrs. GOODWIN, LARNED & TOWLE, for the defendants in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court :

On the 1st of May, 1857, Ranstead, the plaintiff in error, executed to one Marsh, a mortgage, with power of sale, on two lots in the city of Chicago, to secure the payment of his promissory note for $2592.21. The mortgage was subsequently assigned to one Noble, who, as assignee, sold the premises at auction on the 27th of December, 1861, and they were struck off to the defendant in error, Joseph E. Otis, who bid for one lot $1100, and for the other $1250. The evidence shows the property was worth, probably, double the amount paid for it, but its market value was considerably impaired by the fact that it was occupied by Ranstead's wife, who claimed in it both a dower and homestead right, which Otis soon after purchased from her, paying her a consideration in money and property equal to about nine hundred dollars. On the 31st of December, 1861, four days after the sale, Ranstead conveyed the premises to Otis by quit-claim deed, for a nominal consideration of one dollar, and at the same time Otis gave to Ranstead an instrument in writing, by which he agreed to reconvey the property upon the payment, within six months, of the sum of $2500, together with such further sums as he should expend in perfecting the title. The option was left to Ranstead whether to pay this money or not. He entered into no contract to pay it, and in fact none was ever paid by him. In 1864, Otis sold the lots to Cornwell and Elliott, and on the 2d of June, 1865, three years after the expiration of Ranstead's rights under the agreement given him by Otis, this bill was filed by him against Otis, Cornwell and Elliott, claiming that the sale by Noble under the mortgage was illegal and void, and that he occupies the position of a mortgagor and is entitled to redeem from the defendants. The case came to a final hearing upon the pleadings and proofs, and the circuit court dismissed the bill.

The argument of plaintiff in error in brief is, that Noble, as assignee of the mortgage, had no power to sell and convey; that even if he had such power he proceeded illegally in selling the two lots separately when there was a house standing partly upon each lot, and that the sale being void, or at least voidable, the purchaser, Otis, became in equity merely the assignee of the mortgage debt, and the subsequent deed from Ranstead to Otis is to be considered as having been extorted from the former by an inequitable use of the power derived by the latter from his position as mortgagee and creditor, and, therefore not changing their relative positions, or affecting the right of Ranstead to redeem from the mortgage. The complainant does not seek, in this proceeding, to enforce any rights as purchaser, by virtue of his contract from Otis, but merely his alleged right of redemption as a mortgagor.

It is quite true that courts of equity watch, with considerable jealousy, such transactions between mortgagor and mortgagee as seem prejudicial to the former, and in some cases have granted relief where the alleged oppression, on the part of the mortgagee, was rather imaginary than real. But in all the cases cited by plaintiff in error where relief of the nature now sought has been granted by the courts, there has been a recognized and undisputed right of redemption which the mortgagee, or the person standing in his shoes, has undertaken to extinguish by means which the courts have considered inequitable, and an abuse of the advantages derived by the mortgagee from his position. In the case before us we can discover no such grounds of relief. Even as between the immediate parties to a mortgage, if the mortgagor chooses to relinquish his equity of redemption for a fair consideration, and no unconscionable advantage is taken by the mortgagee, the release must be held valid. But as between Ranstead and Otis there was no recognized right of redemption nor relation of debtor and creditor when the deed and contract were executed, nor does the record disclose the slightest oppression

or unfairness on the part of Otis in procuring the quit-claim deed from Ranstead.

Whether the sale by Noble under the mortgage was valid, or voidable, or void, is a question not necessary to be decided. It was at least a sale at which Otis bought as a stranger, and in good faith, and as such purchaser he claimed the title in fee. For the sake, however, of removing all doubt as to his title, he agreed with Ranstead, if the latter would execute to him a quit-claim deed, he would give to Ranstead a contract entitling him to a conveyance upon the payment, within six months, of a little more than the amount expended by Otis. It is wholly incorrect to say that in this transaction Otis was abusing his power as a creditor or mortgagee. He was not acting in either capacity, and was in no position to dictate terms to Ranstead. If the sale under the mortgage was valid, he already had Ranstead's title, and the agreement to convey to him, upon the payment of $2500, within six months, was a simple act of kindness. If, on the other hand, the sale under the mortgage was invalid, Otis was rather at the mercy of Ranstead than Ranstead in the power of Otis. The mortgage sale could be set aside by Ranstead alone, if it could be set aside at all, and it was therefore at his election to insist either that his debt had been paid *pro tanto* by the sale, or that the sale was illegal and the property still subject to redemption. But it was only by the election of Ranstead that Otis could assume towards him the position of a creditor. He had no debt which he could enforce against Ranstead. He could merely remain quiescent, trusting to whatever title he had acquired under the mortgage sale, liable to lose his purchase money if the sale was wholly void, and if merely voidable, having only the right to claim, whenever Ranstead should file his bill, that he should be substituted to the equities of the mortgagee. We can discover in this position no means of oppression, and the record discloses neither threats, nor coercion, nor unfair advantage.

3—52ND ILL.

The transaction was not unreasonable. Neither party knew with certainty whether Ranstead's interest had been extinguished by the sale or not. In this uncertainty they agreed to definitely settle their rights in the premises, by the execution of the deed on the one side and the contract on the other. Although there was no monied consideration for this deed, it is incorrect to say it was made without any consideration. The consideration was the contract, which gave Ranstead a certain right of purchase on reasonable terms, in place of an uncertain right of redemption, to be attended with litigation and expense.

It is true, instruments of this character, when accompanied by a loan or executed to secure a debt, are regarded as amounting only to a mortgage. But this was not the object in the present instance. Ranstead voluntarily chose to exchange his doubtful position for a certain right to purchase, within a fixed time, if he should choose so to do. But he did not bind himself to do so. He incurred no debt to Otis. The transaction was not a loan of money with a deed taken as security. It has no marks of oppression, hard dealing or fraud, and is wholly unlike the case of *Harbison* v. *Houghton*, 41 Ills. 522, cited by plaintiff in error. It is more like the case of *Taintor* v. *Keys*, 43 Ills. 334, in which relief similar to that sought in this case, was refused by the court, although there was more reason for allowing the relief in that case than in the present.

Under his contract, Ranstead acquired rights which he might have asserted within a reasonable time in a court of equity. But when he voluntarily relinquished his position of mortgagor and released whatever equity of redemption he may have had in exchange for this agreement, he lost the right to appeal to the courts for aid in his original capacity as a mortgagor, and must rest upon the rights which he acquired under his new contract, voluntarily made, and perfectly reasonable in its terms. In Hilliard on Mortgages, third edition, page 80, the case of *Endsworth* v. *Griffith* is cited from 2d Abr. Eq. Cases,

in which it was held that in a similar transaction as between the mortgagor and mortgagee, the right to redeem under the mortgage was gone, the mortgagee having entered for condition broken, and obtained a release of the equity of redemption for a further consideration, at the same time giving the mortgagor a promise to reconvey on payment of the whole money within a certain time. The case at bar is much stronger against the right of redemption, for the reasons already given. Here was no contract between the mortgagor and mortgagee, but between the mortgagor and a purchaser at the sale, claiming adversely to the mortgagor, acknowledging no right of redemption, exercising no power as a creditor, but merely entering into a reasonable contract, as a compromise of conflicting claims, and by its terms the parties must abide.

*Decree affirmed.*