# SYLVESTER REMINGTON

## *v.*

# JAMES CAMPBELL.

1. RESULTING TRUST—*how created.* To establish a resulting trust, the money of the *cestui que trust* must be used in the purchase of the property in which the trust is claimed to exist. Such a trust can not be created by agreement or contract.

2. SALE *in form absolute—whether a mortgage.* When a sale is in form absolute, in order to change its character to that of a mortgage, the evidence must clearly show that it was so intended. Slight evidence is not sufficient.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Mr. R. H. FORRESTER and Mr. J. H. KEDZIE, for the appellant.

Messrs. HERVEY, ANTHONY & GALT, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in equity, in the Superior Court of Chicago, praying that the defendant be decreed to reconvey to complainant a certain tract of land therein described, and for general relief.

Complainant's claim to relief is placed on two grounds: first, that of a resulting trust; second, as an equitable mortgagor entitled to redeem.

We have carefully considered the pleadings and testimony in the cause, and are well satisfied that, in neither aspect of the case, is the complainant entitled to any relief.

There is no semblance of a resulting trust as that relation is understood. This court has said, and such is the uniform doctrine, that such a trust can not be created unless the money of the *cestui que trust* was used in the purchase of the property

in which the trust is claimed to exist. *Holmes* v. *Holmes*, 44 Ill. 168. It can not be created by agreement or contract. *Sheldon* v. *Harding*, ib. 68 ; *Bruce* v. *Roney*, 18 ib. 67.

Had Remington, in this case, advanced the money on the purchase of the land, and the deed made to Campbell, there would be a resulting trust.

The other ground of relief is, that appellant was an equitable mortgagor and entitled to redeem.

The facts in the record show most clearly, we think, appellant occupied, in no sense, the position of a mortgagor. The fact alone, that appellant took a contract from appellee to convey to him, at a certain day, the south half of the tract on the payment, by appellant, of one half the original purchase by the first day of March, 1866, repels the idea of any such relation.

It is well settled, when parties give to a transaction all the forms of a sale, the proof must be clear, it was intended as a mortgage, in order to change its character. Slight evidence is not sufficient. *Dwen, Ex'r, et al.* v. *Blake, Ex'r*, 44 Ill. 135. We look in vain into this record for any, the slightest, evidence, to show this transaction was a mortgage. The cases cited by appellant have no analogies in common with this case, and have no application to it. Campbell had loaned no money to appellant, nor had he agreed to loan any to him. They were, in the first instance, jointly interested in the purchase of the land, every dollar of the purchase price of which was advanced by Campbell on the promise of appellant that he would refund his portion in a few days. Failing in this, he transferred all his interest in the land to Campbell, allowing him to take a deed for it in his own name, and solely as a gratuity, with the view, alone, that appellant might derive some benefit from the purchase, which was then a hazardous one. Campbell gave appellant a written contract to convey to him the south half of the tract, provided appellant paid him therefor one half the purchase money on the first day of March, 1866, the day Campbell's note for the purchase money matured, with a clause in the contract making time of the

essence. This, appellant failed to do, when, from a generous impulse, and from no other consideration, Campbell extended the time to appellant, in which to make this payment, thirty days. Appellant was again in default, when Campbell served a notice upon him on the 2d of April, 1866, declaring the contract forfeited. How an equitable mortgage can be constructed out of such a transaction as this, we can not perceive.

To this declaration of forfeiture appellant made no objection. He regarded the contract as at an end, the property, at the date of forfeiture, being worth but little more, if anything more, than the original purchase price. This is evident from the testimony. If it had advanced in value, there would have been no difficulty in raising one half the purchase money upon it. The truth appears to be, appellant was not very anxious to raise the money he had engaged to pay Campbell, and was not stimulated thereto until some four years after the forfeiture was declared, when in June, 1870, he filed this bill. We fail to perceive any ground on which to ask the equitable interposition of this court. Appellant has, at no time prior to filing this bill, manifested any desire to perform his contract. About that time, by reason of projected public improvements in the neighborhood, this land had risen very greatly in value, and without the payment of one dollar on his contract, and that contract declared forfeited without any objection from him four years previously, he now seeks, on the vainest possible pretenses, to stir up an equity, which, if one existed, has been lost by his laches. Had the bill been filed for a specific performance of the contract of October, 1866, appellant would have had, for the reasons given, no standing in a court of equity. Equally unsubstantial is his position as a *cestui que trust*, or an equitable mortgagor. *Ranstead* v. *Otis et al.* 52 Ill. 30, is not unlike this case.

We perceive no error in the decree, and all agree it should be affirmed.

*Decree affirmed.*