Kline v. Vogel.

---

KLINE et al., Appellants, v. VOGEL et al.

1. **Equity :** " HE WHO SEEKS EQUITY MUST DO EQUITY : " MEANING OF THE MAXIM. The true meaning of the rule that, " he who seeks equity must do equity " is, that, where a complainant comes into a court of equity invoking its aid, as by a bill to vacate a foreclosure sale and to redeem the property, such aid will not be granted except upon equitable terms. This is, however, not a question of pleading, but one of performance by the complainant of those conditions which a court of equity imposes " as the price of the decree it gives him." Per Sherwood, J.

2. **Equitable Rights :** LIMITATION. Courts of equity, when enforcing legal or analogous rights, as in administering remedial justice, which they are sometimes called upon incidentally to do, will generally adopt the limit of time prescribed by the statute of limitations. But when the relief sought is based upon a right purely equitable, one cognizable alone in a court of conscience, then that court acts solely upon its own inherent rules altogether outside and independent of the statute of limitations. Per Sherwood, J.

3. **Equity :** BILL TO REDEEM : PAYMENT OF DEBT, ETC. Where plaintiffs, who were the mere purchasers of the equity of redemption, seek to vacate a foreclosure sale and to redeem the land, they must, in order to prevail in the suit, pay off the debt, principal and inter-

est, taxes and repairs, etc., and having failed and declined to. do this, their bill was rightly dismissed.

4. .——— : SUIT TO REDEEM : TENDER : PRODUCING MONEY IN COURT. Where a petition to set aside a foreclosure sale and to redeem the property from the debt shows a case in which it is necessary to take an account of rents, taxes, repairs, etc., and contains an offer to pay whatever is due on the property, a tender before suit is not required. Nor need the plaintiff bring any money into court until the amount due is ascertained. Per Black, J.; Norton and Ray, JJ., concurring.

°5. ——— : ——— : ——— : MAXIM, "HE WHO SEEKS EQUITY MUST DO EQUITY." Still the maxim, "he who seeks equity must do equity, " is not simply a question of performance of those conditions which the court by its decree may impose — ordinarily a tender or offer to pay is essential ; the obligation to do equity not requiring a useless formality, but a substantial willingness to perform the agreement, and that willingness should be evidenced by an offer to perform, unless the party is excused by the circumstances of the case. Per Black, J.; Norton and Ray, JJ., concurring.

6. Right Purely Equitable : LIMITATION. Where the relief is based on a right purely equitable, the court does not act outside, and independent of, the statute of limitations ; the court cannot in that class of actions lengthen the statutory period within which such an action may be brought. Per Black, J. ; Norton and Ray, JJ., concurring.

7. ——— : ———. Where in such action, based on a purely equitable right, there is nothing more than the mere lapse of time to bar the same, the statutory period of limitations is the guide. The right to relief in a court of conscience must often be asserted without delay or acquiescence, because of the nature of the relief asked, the character of the property involved, its situation and other attending circumstances. These things are often interwoven with the right to relief and out of the whole grows the doctrine of laches and equitable estoppel, which may defeat the action after a period short of the statute of limitations. Per Black, J. ; Norton and Ray, JJ., concurring.

8. ——— : ——— : LACHES. The doctrine of laches may be applied within the period of time fixed as a bar by the statute of limitations and the statute still have full force and effect. Per Black, J. ;. Norton and Ray, JJ., concurring.

## Appeal from St. Louis Court of Appeals.

AFFIRMED.

*Pattison & Crane* for appellants.

(1) The resident plaintiff and the one acting for all the others was lulled into security by the promise of Vogel to take a quit-claim deed to the land in full settlement of the note. (2) The price paid for the property was grossly inadequate. Besides, the seven distinct houses were sold as one. This court has said that " where the transaction discloses a state of affairs that shocks the moral sense or outrages the conscience, courts will interfere on *slight circumstances* to promote the ends of justice." *Durfee v. Morgan,* 57 Mo. 379 ; see also *Stoffel v. Schroeder,* 62 Mo. 178 ; *Vail v. Jacobs,* 62 Mo. 130. (3) The houses should have been sold separately. The undisputed facts in the case bring it within the reasoning and the express language of the court in *Tatum v. Holliday,* 59 Mo. 428. The court say : " Where property is susceptible of division, and it will bring more by being divided and sold in separate parcels or lots than by being sold in a body, then it is the duty of the trustee to make the division and sell a portion accordingly, and if he fails in this, the sale will be held invalid, on application of the party aggrieved." In the case at bar at least two of the witnesses for plaintiffs testified that the property would have brought more if the houses had been sold separately. None of the defendants or their witnesses deny this. There was manifestly the " resulting injury from a sale made in this way," which is referred to in *Benkendorf v. Vincenz,* 52 Mo. 444; see also *Chase v. Williams,* 74 Mo. 434. (4) The trustees were guilty of a gross breach of faith in making the sale in the manner they did, and at the time they did ; especially in view of the then disturbed condition of the country. That the result of the social dis-

turbances then prevailing was to greatly reduce, for the time being, the value of all real estate, is clearly testified to by the witnesses for plaintiffs, and no witness introduced by the defendants attempts to deny it. The trustees did not act with the good faith required of them. *Sherwood v. Saxton*, 63 Mo. 78; *Graham v. King*, 50 Mo. 22; *Stoffel v. Schroeder*, 62 Mo. 178; *Quackenbush v. Leonard*, 9 Paige, 347; *Ringgold v. Ringgold*, 1 Harr. & Gill, 11; *Stoddard v. Denison*, 7 Abb. Pr. (N. S.) 309; 38 How. Pr. 296. There has been no laches on part of plaintiffs; the delay in commencing the proceedings has been satisfactorily accounted for.

*Broadhead & Haeussler* and *Cecil V. Scott* for respondents.

(1) Mere inadequacy of price, in the absence of fraud, is not sufficient ground upon which to set aside a sale, especially when the party complaining had ample notice, and took no measures to protect his rights by bidding at the sale or otherwise. *Landrum v. Bank*, 63 Mo. 48; *Phillips v. Stewart*, 59 Mo. 491; *Duncan v. Sanders*, 43 Mo. 297; *Irwin v. Parhaim*, 12 Howard, 197; Story's Eq. Jur., sec. 244. (2) Whether the so-called houses or tenement row should have been sold separately or together was a matter of discretion with the trustees, and unless manifestly abused such discretion will not be reviewed. *Chase v. Williams*, 74 Mo. 429; *German Bank v. Stumpf*, 73 Mo. 311; *Kelly v. Hurt*, 61 Mo. 463; *Benkendorf v. Vincens*, 52 Mo. 441; *Chesley v. Chesley*, 54 Mo. 347; *Bales v. Perry*, 51 Mo. 449. (3) The conduct of appellants, allowing respondents to take possession, pay back taxes, accruing taxes, improving, etc., for three years, estop them from claiming relief. *Rutherford v. Williams*, 42 Mo. 19; *Bradshaw v. Yates*, 67 Mo. 221; *Vail v. Jacobs*, 62 Mo. 130; *Kelly v. Hurt*, 74 Mo. 567. (4) Upon all the facts taken

together as disclosed in this case, they do not constitute a case for equitable relief.

SHERWOOD, J.— This is an equitable proceeding, having for its object the setting aside of a sale made under a deed of trust and for permission to redeem the property ; for an accounting of rents and profits, and that the title be decreed to vest in plaintiffs on payment by them of the balance found to be due Vogel, and for general relief. Hesse was once owner of the property. In 1874 he incumbered the same by a deed of trust to secure a loan of five thousand dollars, having three years to run. Vogel became the owner and holder of the notes secured by the trust deed. Hesse sold the property subject to the deed of trust, and plaintiffs, Pattison for himself and in trust for his co-plaintiffs, became the owner of the equity of redemption in said property in November, 1875. Hesse disappeared.

In February, 1877, the debt matured, and Vogel notified plaintiffs that he required the same to be paid, but indulged them for over three months in order for them to raise the money. They tried to do so, but failed, and told Vogel in June, 1877, that they could not pay, and agreed with Vogel to give a quit-claim deed, and have the note surrendered in order to save foreclosure costs. Pattison, without arranging the matter prior to his departure, went east for the summer, remaining until September, and while there sent a quit-claim deed to his agent, which Vogel refused to receive on account of the conditions accompanying it, but what those conditions were does not appear. Thereupon the plaintiffs were notified that the deed of trust would be foreclosed. The property was duly advertised for sale, and the same sold to Vogel, August 15, 1877, who was the highest bidder, at five hundred dollars. Although Pattison was duly notified of the time of the sale by his agent, Logan, he did not return nor authorize any one to pay attention

to it.  The property consisted of adjoining tenement houses, seven in a row, covering one hundred feet front, each house containing four rooms.  Hammel, who made the sale, asked of those present if they would bid on the houses separately, and if so, it would be put for sale in that way, but as no one expressed a wish to bid on it in that way, it was offered for sale as a whole.  The property at that time was in very bad condition, being out of "repair and hardly fit to live in," the street in front of it not made, and its value was variously estimated at from three thousand to ten thousand five hundred dollars.

Vogel, after his purchase, put the houses in repair, paid taxes and insurance on the property.  Nearly three years after the sale this proceeding was begun.  Just after suit was brought Vogel, on March 25, 1880, made offer to plaintiffs that if they would, by April 1, reimburse him for what he had expended and pay the note and interest, rendering them at the same time an account, he would grant them all they asked by their suit, but this offer was declined.  He also renewed that offer when on the witness stand, but it was not accepted.  The circuit court dismissed the petition, and the plaintiffs appealed to the St. Louis Court of Appeals, and being unsuccessful, have appealed here.

I.  I attach no importance to the fact that no tender of the money due was made in the petition.  On a similar occasion we said : "But it is claimed that the plaintiff has lost the benefit of his tender by failing to pay the money into court.  No objection on this score was made in the court below, and if made, would hardly have been tenable.  The proposition is doubtless a correct one when applied to a formal plea of tender in an action of law brought to recover a debt."  2 Greenl. Evid. sec. 600.  But it is scarcely applicable to a case of this kind, where no recovery of money is asked on either side, but equitable relief, on the ground that the sale

should not have occurred under the circumstances detailed in the petition and established by the evidence. And this being a proceeding in equity, will be governed by rules and principles prevalent in those courts where relief of that character is prayed. Among those rules, having application here, is one to be presently mentioned. The true meaning of the rule, whose frequency of invocation would seemingly argue a better knowledge of its import, that "he who seeks equity must do equity," is simply this : that where a complainant comes before a court of conscience invoking its aid, such aid will not be granted except upon equitable terms. These terms will be imposed as the price of the decree it gives him. The rule "decides nothing in itself," for you must first inquire what are the equities which the plaintiff must do in order to entitle him to the relief he seeks. *Hanson v. Keating*, 4 Hare, 1 ; *Neesom v. Clarkson, Id.* 97 ; *Phillips v. Phillips*, 50 Mo. 603 ; *Erwin v. Blake*, 8 Pet. 18 ; Story Eq. Jur., sec. 64, and cases cited. Thus, where a husband comes into a court of equity for relief as to any property of his wife, which he claims *jure mariti*, he will be obliged to submit to the terms of the court by making suitable provision for her, or else assistance will be denied him. So, also, if a borrower of money on usurious interest seeks the cancellation of the instrument which evidences the debt, equity refuses its aid unless upon the condition that payment be made the lender of what is *bona fide* due him. The above are only a few out of a large number of examples which might be cited in illustration of the rule referred to, which finds its application not in questions of pleading nor by what the plaintiff offers to do therein, but in the form and frame of the orders and decrees, both interlocutory and final, whereby equitable terms are imposed as a condition precedent to equitable relief granted. In *Quin v. Brittain*, 1 Hoff. Chy. 353, the objection was made, that in the bill (which was substantially a bill to redeem)

there was no offer to pay the amount due.   But it was
held that this was not essential, and the reasons given
were, that on such a bill no decree would go for the pay-
ment of the amount personally ; that if the amount
found due were not paid there would be a decree for dis-
mission of the bill, which would operate as a foreclosure.
*Bishop of Winchester v. Paine,* 11 Vesey, 194.

And the same theory evidently dictated the decree
before us, which requires the payment within thirty
days ( after the decree or its affirmance) of the two inter-
est notes, and the one which had meanwhile matured, as
well as the costs attending the advertisement and sale of
the premises in question.   Now, if it was not necessary
to offer to pay the amount due in the case of *Quin v.
Brittain, supra,* which is analogous to the case at bar,
since a decree of dismission here would be attended by
similar detrimental results, and as the offer to pay in a
plea of tender was as essential as the production of the
money in court ( 2 Greenl. Evid., *supra*), it would seem to
follow that the production of the money in court in a
cause of this sort might as readily be dispensed with and
on the same grounds as the offer referred to.   In short,
as the offer to pay was unnecessary, so was also its
accompanying incident, the payment itself into the
court.   The foregoing considerations clearly indicate
how widely variant equitable is from legal procedure,
and induce the belief that whatever the necessity for
bringing money into court in a strictly technical plea of
tender, where the action looks alone to a mere pecuniary
recovery, such necessity has no existence and con-
sequently furnishes no criterion in an instance like
the present.   *Whelan v. Reilly,* 61 Mo. 565.   The
same view is taken elsewhere.   Thus, in the case of
*Dwen, Ex'r, v. Blake, Ex'r,* 44 Ill. 135, it is said: "It
is urged that there is no evidence of a tender.   We
do not understand that the law requires a mortgageor to
make a tender before he can compel a redemption.   All
that is necessary is that he pay the sum found by the

court to be due within the time limited by the decree. A court of equity is not bound by any fixed rules in relation to the tender of money, but it will not allow the ends of justice to be perverted or defeated by the omission of an unimportant or useless act, which nothing but a mere technicality could require. *Webster v. French*, 11 Ill. 254 ; *Barnard v. Cushman*, 35 Ill. 451.. A tender being unnecessary to give the right, the allegation of the tender unproved could not be held to defeat the previously existing right." To the same effect, see 2 Lead. Cas. Eq. (Hare & W. Notes) 305 ; *Reeves v. Cooper*, 1 Beas. Ch. 223 ; Freeman on Judgments, sec. 515 ; *Parsons v. Parsons*, 9 N. H. *loc. cit.* 309 ; 1 Story Eq. Jur., secs. 64 (*e*), 693, 707 ; 2 Bishop M. & D., sec. 721 ; 1 Pomeroy's Eq. Jur., secs. 385, 388, 389, 390, 391, 392, and 393.

Very often the case is so complicated, the equities involved therein so uncertain, that they can by no possibility be ascertained until after the most painstaking investigation by the chancellor. To require, therefore, that a plaintiff, in order to make his pleading good, in order to prevent his being sent out of court on account of a defective pleading, he should be compelled to do what the unascertained and unascertainable equities of his case demand, seems altogether unreasonable. The true theory of the maxim, "he who seeks equity must do equity," is not a question of pleading,. but a question of performance — performance by the complainant of those conditions which a court of equity imposes "as the price of the decree it gives him."

II.   Now in regard to the laches of the plaintiffs : This suit was not brought for nearly three years after the sale.   Meanwhile Vogel, the purchaser, had repaired the scarcely habitable premises, paid taxes and effected insurance, and the plaintiffs, cognizant of all that occurred, taking their chances of whether the property would appreciate in value, now come forward to "reap where they had not sown, and to gather where they had not

strewn." This cannot be permitted, notwithstanding the statute of limitations had not run between the time of the sale and the time of suit brought. Courts of equity, when enforcing legal or analogous rights, as in administering remedial justice they are sometimes called upon incidentally to do, will generally adopt that limit of time which is prescribed by the statute of limitations. Adams Eq. 227. But when the relief sought is based upon a right purely equitable, where it is cognizable alone in a court of conscience, then that court acts solely upon its own inherent rules, altogether outside of and independent of the statute of limitations. As was said in *Landrum v. Union Bank*, 63 Mo. 56 : "Laches is an equitable defence, and there is no artificial, fixed, or determinate rule on this subject, but each case, as it arises, must be decided according to its own particular circumstances." In *Badger v. Badger*, 2 Wall. 94, when speaking of the subject of laches, the court says : "Courts of equity, acting upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the operation of adverse rights." In *Sullivan v. Railroad*, 94 U. S. 807, Mr. Justice Swayne says : "To let in the defence that the claim is stale, and the bill cannot, therefore, be supported, it is not necessary that a foundation shall be laid by any averment in the answer of defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will, upon that ground, be passive, and refuse relief. Every case is governed chiefly by its own circumstances ; sometimes the analogy of the statute of limitations is applied ; sometimes a longer period than that prescribed by the statute is required, in some cases a shorter time is sufficient ; and sometimes the rule is applied where there is no statutable bar. It is competent for the court to apply the

inherent principles of its own system of jurisprudence, and decide accordingly." Mr. Justice Miller, when speaking for the court in *Twin Lick Oil Co. v. Marbury*, 91 U. S. 591, with regard to the time when a party should exercise his option to have a sale set aside, says: " This has never been held to be any determined number of days or years as applied to every case, like the statute of limitations, but must be decided in each case upon all the elements of it which affect that question."

We need not discuss this branch of the subject at greater length, both because its discussion is but that of discussing an elementary, familiar and fundamental principle, and because, also, that subject has been so recently and exhaustively discussed in *Bliss v. Prichard*, 67 Mo. 181. Judge Henry, in that case, after citing and quoting from a large number of authorities, showing that laches will constitute a bar to equitable relief, says: " The distinction between law and equity has not been abolished in this state. The modification is as to the form of action, and the change effected is embraced in section 1, page 999, Wagner's Statutes, which provides that there ' shall be in this state but one form of action,' etc. The principles of equity are as deeply imbedded in our laws as before the adoption of the code, and he would be regarded as a rash legislator who would propose the entire elimination of equity from our system of jurisprudence. It is so interwoven with the common law that nothing but confusion and disaster could result from a change so radical. It has not been made, or attempted, in this state, and any effort in that direction would be resisted by every one who duly appreciates the salutary and conservative influence of equity upon strict, inflexible law."

III. It is quite clear that as plaintiffs were the mere purchasers of the equity of redemption in the premises, they could, in no circumstances, prevail in the suit without paying off the debt, principal and interest, taxes,

repairs, etc. This they declined or failed to do, though repeated offers were made to them to that effect, one even on the hearing of the cause. Taking all of the foregoing circumstances into consideration, no doubt is entertained of the equity which dictated the dismissal of the petition, and, therefore, judgment affirmed. All concur.

BLACK, J., CONCURRING.—I concur in affirming the judgment in this case, but do not agree to all of the remarks made by my brother Sherwood. The petition shows a case where it is necessary to take an account of rents, taxes, repairs, etc., and contains an offer to pay whatever is due to Vogel. In such cases a tender before suit is not required, nor need the plaintiff bring any money into court until the amount due is ascertained. But I do not agree that the maxim, "he who seeks equity must do equity," is but a question of performance of those conditions which the court by its decree may impose. This court thought otherwise in *Deichmann v. Deichmann*, 49 Mo. 108, which was a suit for specific performance, where it is said : "Ordinarily such tender or offer to pay is essential, upon the principle that one who seeks equity must do equity," and further on in the opinion it is said : "the obligation to do equity does not require a mere useless formality, but a substantial willingness to perform the agreement, and that willingness should be evidenced by an offer to perform, unless the party is excused by the circumstances of the case."

Again, this court has decided on several occasions that our present statute of limitations applies to equitable as well as legal causes of action. 50 Mo. 455 ; 61 Mo. 188. Those rulings, in my judgment, are correct, and ought not to be disturbed. I do not, therefore, agree to the proposition that when the relief sought is based upon a right, purely equitable, that the court acts

outside of and independent of the statute of limitations, for I understand the proposition to state, and to be intended to include, the doctrine that the court in that class of actions may even lengthen the statutory period within which such an action may be brought.   Where there is nothing more than the mere lapse of time, the statutory period is the guide.  ˙The right to relief in a court of conscience must often be asserted without delay or acquiescence, because of the nature of the relief asked, the character of the property involved and its situation, and other attending circumstances.   These things are often interwoven with the right to relief, and out of the whole grows the doctrine of laches and equitable estoppel, which may defeat the action after a period, short of the statute of limitations.   The doctrine of laches may, therefore, be applied within the period fixed as a bar by the statute, and the statute still have full force and effect All this I believe to be in accord with the decisions before noted, and with *Bliss v. Prichard*, 67 Mo. 183, and subsequent cases.   Judges Ray and Norton concur with me in what is here said.