## OVERTON ET AL. *vs.* STEVENS ET AL.

1. *In Chancery.*—The bill alleged, that complainants purchased of A., as the agent of B., certain horses, for which complainants executed their two notes to B. for $2,800 each; the first note payable on the first of January, 1840, and the second one year thereafter. At the time of the purchase A. executed to complainants a bill of sale for the horses, in which he *bound himself*, *as agent*, to deliver to complainants perfect pedigrees of the horses. In the bill of sale A. described himself as agent of B., but signed the bill in his own name. B. brought suit on the first note, and recovered judgment thereon. The complainants further charge, that the pedigrees were never delivered to them, by which they sustained damage to the amount of the first note, and that defendants, A. and B., were non-residents of this State, so that no process could be served upon them, and therefore prayed a perpetual injunction against the collection of the judgment.

   The answer of B. admitted the sale of the horses, and the authority of A. to sell, but denied any authority in A. to bind B. to furnish pedigrees.

*Held:* That the bill was properly dismissed, for want of equity. The bill of sale, signed by A., *in his own name,* was binding on himself alone, and the complainants did not charge that B. had, in any manner, recognized any authority on the part of A. to bind B. to furnish the pedigrees. The bill was further defective, in not making a tender to B. of the amount admitted to be due to him.

2. It is generally true, that a court of equity has no jurisdiction where a party had a complete defence at law, and failed to make it; but if the defence be of such a character that it might be made either at law or in equity, the latter court will afford relief, though the party has neglected to make his defence at law.

3. Where covenants are mutual and independent, and an action is brought thereon by one of the parties, who is a non-resident, or insolvent, such non-residence, or insolvency, may be a good ground for the interposition of a court of equity, in order to prevent irreparable injury to the other party.

4. Where one has authority, as agent or attorney, to bind another in a written instrument, and signs the instrument in his own name alone, he binds himself and no other person, although he may have described himself as agent in the body of the writing.

## APPEAL from Marion Circuit Court.

HICKMAN, *Attorney for Appellants.*

1st. Upon the motion to dissolve the injunction, for the want of equity on the face of the bill, the Circuit Court ought not to have dismissed the bill, and given a decree against complainants for the costs.—See Harden, 12; 1 Bibb, 518; 1 Mon., 190; 3 J. J. Mar., 302; 6 Cranch, 51.

2d. The appellants contend, that the Circuit Court of Marion, sitting as a court of chancery, had undoubted jurisdiction in this cause, both defendants in the bill being non-residents of this State.—See 2 Littell, 72; *Ibid.,* 85; Littell's Select Cases, 469; *Ibid.,* 407; *Ibid.,* 244; 1 Littell, 305; 4 Littell, 157; 3 Mon., 83; Littell's Select Cases, 26.

3d. If the appellee, Stevens, was not originally bound by the acts of Van Lear, his agent, who made to appellants the bill of sale, still, his subsequent recognition of the acts of Van Lear made him (Stevens) responsible to appellants for the pedigrees which Van Lear had bound himself to furnish.— See 3 Marshall, 484; 5 Littell, 178; 6 Wheaton, 240; Paley on Agency, 203, 302, 305, 197.

4th. Van Lear was made a defendant; an order of publication was made against him; he never answered the bill, and the Circuit Court ought not to have entered a decree for costs in his favor, against the complainants.—2 Marshall, 244; 3 *Ibid.,* 535.

CROCKETT *and* BRIGGS, *for Appellees.*

1st. A court of chancery had no jurisdiction of the cause; for the reason, that the complainants had a plain remedy at law. In the suit at law upon the note, the defendants could have proved damages in mitigation of the amount to be recovered.—3 Wendell, 236; 4 *Ibid.,* 483; 8 *Ibid.*

2d. The bill of sale in this case imposes no obligation to furnish pedigrees,

upon Stevens. The bill of sale is not signed by Stevens, either in person, or by his agent. It is signed simply, "Isaac Van Lear," and by its express words, the promise to furnish pedigrees is made by Van Lear, and not by Stevens.—Coke's Rep., 75; Comyn's Digest, "Attorney," c. 14; Paley on Agency, 180; 2 Kent's Com., 620, 631, (3d edit.); Story on Agency, sec. 147; 8 Marshall, 545; 2 Lord Raymond, 1418; 1 Strange, 705; 2 East, 142; Bac. Ab. Cases, 1, sec. 10; 5 East, 148; 1 Wils. Rep., 28, 58; 6 John. Rep., 94; 9 John Rep., 334; 10 Wendell, 87; 4 Mass. Rep., 595; Story on Agency, sec. 153; Livermore on Agency, 253, 4; 2 Strange, 955; 5 Mass. Rep., 299; 1 Hill, 160; 20 Wend. Rep., 257; 8 Mass. Rep., 108; 12 Mass. Rep., 174; 7 Monroe's Rep., 356; 4 J. J. Marshall, 127; 2 Wheaton, 56, 7.

3d. The complainants "must do equity before they can require equity:" in other words, they cannot tie up the judgment on the first note which matures, without showing their readiness to pay the last note, which is admitted to be due, and which remains unpaid. In New York, it has been decided, that relief in equity should not be granted against a usurious contract, unless the plaintiff brings into court the money actually lent, with interest. (1 Johns. C. Rep., 367, 439.) The same principle applies with more force here. Before the complainants should be allowed to tie up one-half the purchase money, they ought to have tendered in court the remainder, which they admit to be due.

4th. Inasmuch as the complainants allege that the damage which they suffered amounted only to one-half the purchase money, they had no right to enjoin the collection of the *first* note, when it is conceded that the *last* note would cover the loss.

5th. Upon the proof, complainants are not entitled to relief, as there is no evidence that they have been damaged, as alleged in the bill; on the contrary, the evidence is satisfactory, that they have sold the horses for as much as the original cost, besides having realized large profits by running them.

NAPTON, J., *delivered the opinion of the Court.*

William G. Overton, Samuel C. Sloan and Henry Shacklett, filed their bill in chancery, in the Marion Circuit Court, at its November term, 1840, to enjoin the collection of a judgment at law, obtained against them by John C. Stevens. The bill charges, that in 1838, John C. Stevens, sent by his agent, Isaac Van Lear, to the city of St. Louis, a lot of blooded horses, four of which the complainants purchased, upon a written contract with Van Lear. That contract was as follows: "Know all men by these, that I, Isaac Van Lear, agent for John C. Stevens of the State of New York, in consideration of five thousand six hundred dollars to be paid me, by S. C. Sloan, Henry Shacklett and William G. Overton, all of the State of Missouri, in two equal instalments, as per their two notes, bearing even date with this, do hereby give, grant, bargain and sell unto the said Sloan, Shacklett and Overton, the four following horses, to wit: black horse, *African*, five years old, by imported Valentine, dam Ethelinda, by Marshal Bertrand; *Bonny Black*, mare, five years old, by imported Valentine, dam Helen Mar, by Thorn-

ton's Rattler; *Ethiopia,* a black mare, four years old, by Darhull, dam by imported Expedition; *Mortimer,* a chesnut horse, five years old, by Monmouth Eclipse, dam by Oscar: 'To have and to hold the said horses unto the said Sloan, Shacklett and Overton, free of any claim or encumbrance whatever; and I, the said Van Lear, for John C. Stevens, do, guaranty the above-named horses to be thorough bred, and bind myself, as agent, to deliver to the said Sloan, Shacklett and Overton, full, perfect and properly authenticated pedigrees of said horses, within a reasonable time.— Given under my hand this 18th September, 1838.

(Signed) "Isaac Van Lear."

Complainants allege, that they executed two notes, each for the sum of twenty-eight hundred dollars, payable on the 1st of January, 1840, and the 1st of January, 1841, and delivered the same to Van Lear, as agent for said John C. Stevens; that Stevens has brought suit, and recovered judgment on the first note. The complainants aver, that full and perfect pedigrees of the horses sold to them by Stevens, especially of Mortimer and African, are essential to a proper appreciation of their value by the public, and that said pedigrees had not been furnished, pursuant to contract with said Stevens, although said Stevens had fully recognized the agency of Van Lear in transacting the sale. The bill proceeds to specify sundry losses, which the complainants suppose themselves to have sustained, by not having properly authenticated pedigrees, and charges those losses to be equal to the amount of the first note, for two thousand eight hundred dollars. The bill further charges, that Stevens is a non-resident, so that no process can be served on him, and prays a perpetual injunction against the collection of the judgment at law for twenty-eight hundred dollars. Van Lear is made a party defendant.

The answer of Stevens admits the sale of the horses, and the authority of Van Lear to sell, but denies any authority in Van Lear to bind him to furnish pedigrees; avers, that the pedigrees of the horses were fully known to the complainants when they purchased; that they were published in the Turf Register, a paper to which they were subscribers; and denies, that complainants sustained any loss or inconvenience for want of written pedigree; avers, that the horses were sold by complainants at a profit, after realizing handsome sums by running them.

Van Lear never answered the bill, and no notice was taken of him in the order of publication.

At the November term, 1843, defendant filed two motions—first, to dissolve the injunction granted by the County Court on the bill, answers and depositions; and, second, to dissolve the injunction, for want of equity on the face of the bill. From the bill of exceptions, it appears, that the injunction was dissolved, and the bill dismissed, for want of equity on its face.

The only question, then, presented for the consideration of this Court is, whether the bill contains any equity.

Objections to the jurisdiction of the court are not regularly made at the hearing of a cause in chancery, but if it be obvious that the court has no jurisdiction, the bill will, notwithstanding the irregularity of the proceeding, be dismissed. It is generally true, that equity has no jurisdiction, where a party had a complete defence at law, and failed to make it; but if the defence be of such a character

that it might be made either in law or equity, a court of chancery will afford relief, though the party has neglected to make his defence at law.—9 Ves., 464 ; 7 Ves., 19; King *vs.* Baldwin, 17 Johns. Rep.; 388.

In the present case, the grounds upon which the interposition of the chancery court is sought, are not only the existence of a defence to the note, arising out of a claim for damages, occasioned by the breach of warranty, but the non-residence of the parties defendant, by which such defence is rendered unavailing to the complainants in the suit at law.

Where there are mutual engagements, entirely independent of each other, either party may sustain his action for a breach of the promise of the other, without an averment of a performance of the obligation assumed by him, and consequently his non-performance furnishes no defence to his adversary. In such cases, however, the non-residence or insolvency of the party has been considered as furnishing an auxiliary ground of jurisdiction to the courts of equity, and authorizing their interference. This principle has been frequently recognized in Kentucky, and their reports furnish abundance of authority in favor of the position taken by the appellants. The question has not arisen in this State, so far as I know, but it is most unreasonable that our courts should exercise a power of this nature, where a non-resident or insolvent creditor is pressing the collection of his demand, against which the defendant has a just offset, either liquidated or unliquidated. The defence would be inadmissible at law; and even when the defence is one arising out of a breach of warranty, and therefore, according to some authorities, admissible in the suit at law, the party may still resort to equity, the courts of law and equity having concurrent jurisdiction. But whether the practice alluded to should be adopted in this State or not, is a question not necessary to be determined now. Assuming, that the general grounds taken by the complainants are sufficient to warrant the interposition of a court of equity, there are two objections to the case, as made out in the bill, either of which is, in our opinion, conclusive.

1st. The bill of sale given by Van Lear to the complainants imposed no obligation upon Stevens. It does not purport to bind Stevens. It is true, that Van Lear *describes* himself as the agent of Stevens, but he signs his own name, not the name of Stevens, to the instrument, and binds only himself. (Story on Agency, sec. 148, &c.) Nor is there, in the bill, a distinct charge of any such acts on the part of Stevens, as would amount to a recognition of the agency of Van Lear. There is no averment that Stevens was ever apprised of the terms or substance of the bill of sale, as given by Van Lear, or that Stevens ever authorized any warranty of the pedigrees to be given, or recognized such warranty after it was executed by Van Lear. It is asserted, by way of recital, that Stevens had repeatedly recognized the agency of Van Lear in the transaction, and, so far as the sale is concerned, this is admitted by Stevens in his answer; but no specific acts of Stevens are charged as recognizing the warranty contained in the bill of sale.

2d. It is an excellent and invariable maxim of a court of equity, that he who asks the aid of that court must do equity himself. The complainants admit themselves to be indebted to Stevens, to the full amount of the judgment which he has obtained against them. If they pay the present judgment, it appears, from

their own statement, they are still perfectly secure; for their claim for damages, at their own estimate, will not exceed the amount of the note, which, at the filing of the bill, was still due. If the present judgment was enjoined, it is not equally clear that Stevens would be secure, as the complainants might, in the mean time, become insolvent. To entitle them to the aid of a court of equity, they should, at all events, have proffered to pay what they admit to be due.

Judgment affirmed.