AMOS R. PHILLIPS, Respondent, *v.* MURRAY PHILLIPS *et al.*, Appellants.

1. *Deeds and conveyances — Delivery, rebuttal of— Registry — Possession of the deeds.* — Where a grantor, after executing deeds, handed them to the grantee, saying "Here, my son, are your deeds," evidence is admissible to show the *mala fides* of the transaction, such as the after-possession of the deeds by the grantor and the non-registry of the deeds, the latter especially in the case of deeds of gift.

**2.** *Equity — Decree for title — Trusts — Minors, protection of.*—Where a father conveyed most of his land absolutely by deed of gift to his son, but it appeared by parol evidence that he relied upon this grantee not to "defraud his brother and sister," and the grantee, the deeds being lost, seeks a decree for title, and one of the *cestuis que trust* is still a minor, this court will protect such minor, and the decree will not be granted until a satisfactory provision is made for such minor.

*Appeal·from New Madrid Circuit Court.*

*W. B. Napton,* for appellants.

This suit for title is analogous to suits for specific performance. Where there is a trust or fraud, equitable courts will not interfere, but leave parties to their legal remedies. To get the aid of equity the plaintiff must be willing to do equity himself. (Sto. Eq., §§ 692–93, 706, 769, 787.) The facts show no intent to invest title at the time of the transaction. The deeds were retained in the possession of the grantor.

*A. Hamilton* and *Couran & Ewing,* for respondent.

The plaintiff seeks not the performance of a contract, but to set up and perpetuate the existence of a pre-existing and completed contract or deed; not to create a title, but to restore the lost evidences of a perfect title.

BLISS, Judge, delivered the opinion of the court.

The plaintiff seeks to quiet and have confirmed to him the title to some 9,000 acres of land which he claims were deeded to him by his father, Shapley R. Phillips, while living, but shows that the deeds were lost without being recorded. He makes the heirs of decedent parties, and also the heirs of Mrs. Phillips, now deceased, who was a second wife and not his mother, and who had elected to take a child's interest in the estate of her deceased husband. Mrs. Phillips' heirs alone seem to be defending, but I find a minor grandson of said Shapley R. among the parties, whose interest the court should protect without reference to the character of the defense made by his guardian. The whole claim, then, of the plaintiff must be treated as contested both by Mrs. Phillips' heirs, as inheriting her interest in the estate, and by the plaintiff co-heirs.

It is established by the clearest evidence that Shapley R. Phillips, in February, 1861, two years previous to his death, executed to the plaintiff three deeds to the land claimed in this proceeding, and that his said wife joined in the deeds, relinquishing her dower. These conveyances embraced all the land owned by decedent except the home farm of about 1,800 acres, and the consideration expressed was love and affection and $1,000, which sum the plaintiff does not claim to have paid. If there was no fraud or undue influence brought to bear upon the grantor, it is not pretended that a deed of gift of the kind described would be invalid; but it is asserted in the pleadings that one of the objects of obtaining those under consideration was to fraudulently deprive the widow of her dower. The testimony of the subscribing witnesses to the deeds, and of the magistrate who drew and acknowledged them, is contained in the record, and it is shown that she not only signed the instrument cheerfully, but that she was expressly told that they would cut off her dower, to which she replied that she knew what she was doing, that she was willing Amos should have all but the home farm. So far as the execution of the instrument is concerned, there is nothing to show any undue or improper influence brought to bear upon Mrs. Phillips. As well from her own declarations as from those of her husband it appears that they were both looking to the home farm for their future support, and it does not appear that the lands conveyed yielded any income, or would have been of any practical benefit to them by way of maintenance.

It is further claimed that the deeds were never delivered; that they were retained by the grantor, and continued in his possession until they were destroyed. This point is involved in some doubt. The plaintiff was a young man residing at his father's house. The latter went to a magistrate, stated his desire to make disposition of his land before he died, showed him a list and map of all his real estate, and directed him to embody all, except the home farm, in three deeds to his son Amos; that afterwards he returned with his wife, executed and acknowledged them, and handed them to his son, saying "Here, my son, are your deeds," who put them in his pocket. This was the testimony of Mr. Morrison, the magistrate, and the delivery seems complete, but a

doubt as to the *bona fides* of the transaction is raised from the fact that the instruments were never recorded, and were apparently in the grantor's possession at his death. I should deem these circumstances, unless explained, conclusive that the parties did not intend a complete transfer.

It is true that a registry of conveyance is entirely optional, and will only be deemed essential in favor of subsequent purchasers without notice. But the fact of registry or non-registry may well be considered when there is doubt as to the completion of the transfer, and especially in deeds of gift. I should not deem the excuse for the non-registry satisfactory were it clear that after the formal delivery in the presence of the magistrate the grantor took and held possession of the instruments. The testimony of the plaintiff that the deeds were always in his possession, that he was in Mississippi when his father died, and that they were left at home by mistake, explains the matter; but, throwing that aside as incompetent, the other facts do not conclusively show that they were held by decedent. A nurse of Mrs. Phillips testifies that shortly after the death of Shapley R. Phillips, Mrs. Phillips took his keys from his pocket, opened a secretary or bureau, took out some papers and threw them into the fire, saying "There are the deeds of gift to Amos Phillips; they shan't do him any good." This evidence tends to show a want of delivery, but is explained when we consider that the plaintiff was an unmarried man and lived with his father; and it would be natural for them, when there was mutual confidence, to keep their papers in a common secretary. There is other evidence tending to show such confidence, and that this son, at least as to business outside the home farm, was largely trusted by his father, and it does not appear but that this secretary was, when the son was at home, as much in his possession as in that of his father.

In view of the evident desire of Shapley R. Phillips, when he made the deeds, to distribute and relieve himself of the care of the outside property — of the fact that he, as we shall see, expected it to be held for the benefit of those to whom it would naturally descend; that it was delivered to the grantee as other deeds, and while afterwards found apparently in the grantor's possession, still

it was where the grantee resided when at home, and where he might naturally keep his papers — I cannot find there was no delivery, notwithstanding the latter fact, and notwithstanding the neglect to procure their registry.

It is also claimed that the deeds were executed upon condition that Mrs. Phillips was to receive a deed of the home place, and were not to be held operative without such conveyance to her. But of this there is no sufficient evidence. Saying nothing of the legal effect of such verbal condition, I do not find that she expected anything except the use of the homestead. Her husband said, when the deeds were executed, that the home farm would be enough for him while he lived and for her after his death, and she said she was willing that Amos should have all but the home farm. One of the witnesses to the deeds testifies that Mr. Phillips said he had given his home farm to his wife. This is all the evidence to support the claim, and cannot be considered sufficient.

The decree of the court below vests in the plaintiff the whole property contained in the three deeds to hold for his own use. The circumstances attending their execution, and the declarations of the grantor, indicate that he intended the property conveyed to be held for the use of his three children. No other reason can be given for his desire that it should be embraced in three deeds instead of one. Though that fact of itself may prove nothing, yet in connection with the circumstances surrounding their execution, it is not without significance. There is nothing whatever that indicates any design to disinherit the other children. That was not the motive that induced the conveyance, but the grantor seemed for some reason to have a strong desire that the ownership of his lands should be settled, or that they should be disposed of before he died, reserving only the home farm. When asked why he conveyed them all to Amos, he replied that Amos would not wrong his brother and sister; or, as the magistrate testified at the trial, " when I asked him, why write three deeds, why not make one to each of his children? " he said, " Make the deeds to Amos; he will never defraud his brother and sister." Amos had just come of age; one of his other children was a daughter; her age was not given, and the other one an infant son. It is evident

that, instead of dividing up his land himself, he trusted the division to his eldest son, and for reasons which, perhaps, do not appear. But enough appears to show a trust and confidence reposed in him, and that to ignore it would " defraud his brother and sister."

In this proceeding we are not called upon to say whether or not this trust would be enforced at the suit of his brother and the heir of the sister. But the court will not put him who manifests a disposition to ignore his obligation in a position to be able to profit by such disposition; and even if we conceded that no obligation was shown, still a preference of one child over another is of itself so contrary to natural justice and the policy of our laws that we should not be inclined to aid such preference. The decree below gives the plaintiff an absolute title. The other heirs are made parties and are bound by it, and are so far disinherited entirely. It is true they make no defense, and the brother being now of age may trust the plaintiff if he chooses, and consent to this judgment; but the infant heir of his sister can consent to nothing, and it is the duty of the court to protect his rights. The judgment of the court should therefore be reversed and the cause remanded. If the plaintiff shall be willing to protect the rights and interest of his sister's child, we think he is entitled to relief, and the court below should give him judgment upon his making a satisfactory provision for such minor, either by an independent instrument or in the judgment; and if he declines to make such provision he should not be aided in perfecting his title. The other judges concur.