————o————

ANDREW F. WHELAN, Respondent, vs. BERNARD J. REILLY, et al., Appellants.

1. *Agency—Debt, payment of—Power to receive.*—Authority to receive the whole of a debt embraces power to receive a part.

2. *Note—Possession of warrants payment to possessor.*—The facts of the possession of a note and deed of trust, by an attorney to whom they are entrusted, is, presumptively, enough to authorize payment to the possessor.

3. *Tender—Waiver of informalities.*—Refusal to receive an amount proffered on the ground of insufficiency, is a waiver of any informalities in a tender.

4. *Trustee-Payment of note to.—Semble*, that under the present statute (see Wagn. Stat., 956, §§ 14, 15,) payment to the trustee of a note secured by deed of trust is good.

5. *Tender—Payment of money into court—Equitable relief.*—When action is brought in equity, to set aside a sale under deed of trust, plaintiff does not lose the benefit of a tender made by failing to pay the money into court. The rule as to such deposit, has no application to suits brought for equitable relief.

6. *Deed of trust—Condition that in default of part, whole debt becomes due—Tender—Sale—Bill to redeem—Terms of decree—Misconduct of trustee.*—Where by the terms of a deed of trust on failure to pay the interest notes as they

| | |
|---|---|
| 61 | 565 |
| 101 | 548 |
| 61 | 565 |
| 106 | 362 |
| 61 | 565 |
| 123 | 20 |
| 61 | 565 |
| 134 | 465 |
| 61 | 565 |
| 136 | 273 |
| 61 | 565 |
| 138 | 491 |
| 140 | 116 |
| 61 | 565 |
| 143 | 398 |
| 61 | 565 |
| 151 | 430 |
| 61 | 565 |
| 88a | 434 |
| 61 | 565 |
| 163 | 104 |
| 163 | 110 |
| 61 | 565 |
| 166 | 267 |
| 167 | 73 |

matured, the whole amount of principal and interest forthwith became due, and the trustee was empowered to sell, and for default in payment of a portion of the interest notes, he proceeds to sell, the debtor may, on proof of tender to the trustee, before sale, of the amount then due together with costs accrued, have the sale set aside in equity, and the refusal of the trustee to receive the money may amount to oppressive conduct which will authorize a decree for that reason alone, regardless of the question of tender, on payment of the notes matured at the date of the decree and proper costs.

*Appeal from St. Louis Circuit Court.*

*Krum & Madill,* for Appellants.

I. The tender was not made to the holder of the notes (Cupples,) although he was known to the plaintiff and known to be the holder, and his residence and place of business were known. Plaintiff's agent, Keely, was informed that Krum & Patrick were not authorized to receive payment of the notes, and that they were not in their hands for collection. (See Berthold vs. Reyburn, 37 Mo., 580; Smith vs. Keels, 15 Rich. [S. C.], 318.)

Plaintiff failed to secure the benefit of his tender, if any, by not paying the money into court. (Daughdrill vs. Sweeney, 41 Ala., 310.)

In this case by the very terms of the deed of trust, the trustee, in case of default in the payment of either of the notes, was authorized to sell. There is therefore no question touching his authority to advertise the property for sale. (Reddick vs. Gressman, 49 Mo., 382.)

Certainly, he incurred an expense (cost of advertising) and he was entitled to compensation for what he had done. But the debtor, at no time, offered to pay the costs and charges of the trustee.

*Leverett Bell,* for Respondent.

The tender took away the power to sell under the deed of trust for the non-payment of these notes as fully as payment would have done.

By the terms of the deed of trust, the trustee was authorized after a sale, to apply the proceeds upon the principal

note, but this only for the purpose of distributing the fund; the principal note did not mature for any other purpose. (Morgan vs. Martien, 32 Mo., 438; Mason vs. Barnard, 36 Mo., 384.)

SHERWOOD, Judge, delivered the opinion of the court.

The case presented is this : In November, 1871, the plaintiff owning certain lots in Stoddard's addition to the city of St. Louis, executed jointly with John Whelan, a promissory note for $2,000 payable three years after date, together with interest notes for $100 each, maturing respectively in 6, 12, 18, 24, 30 and 36 months. The deed of trust which to secure the debt conveyed the lots to the defendant, Reilly, as trustee, was so drawn that in case of default made in the payment of any of the interest notes, etc., then the whole amount of the debt secured should immediately become due and payable, etc., etc.

The note due in six months was paid, but those due in twelve and eighteen months, were not met at maturity. Thereupon, the defendant, Cupples, who had become the owner of the notes by transfer from Clements, to whom they were first made payable, delivered the notes and deed of trust to a legal firm for the purpose of having the property properly advertised, and the sale superintended and completed. The advertisement was duly made, but the petition claims that, before the sale the requisite amount to pay the two interest notes, as well as expenses of advertisement, etc., were tendered to the attorney who held the notes, and also to the trustee prior to the sale, but were refused, and the property sold to the defendant, Cupples. The circuit court set aside the sale, and the defendants are appellants here.

1. Some doubt was raised as to whether the attorney to whom the money was offered, was authorized to receive it, but we think his authority was shown with sufficient clearness. And, indeed, it is fairly inferrable from all the attending circumstances. It is true that the firm of which he was a member, was not told in so many words, to collect the notes, but was di-

rected to take such steps as to the advertisement and sale of the property, as necessarily implied the requisite authority to receive the money, especially when considered in connection with the continued possession of the notes down to and on the day of sale. The only conceivable object the owner of the notes could have had in view was the collection of his debt, unless we indulge the uncharitable conjecture that he desired the sale of the trust property at all events. The attorney himself says that he told Keely at both interviews: "I was not authorized to take his money, unless the note for $2,000 and the expenses of advertising were paid." But the testimony of Keely and Curtis is not confirmatory as to any statements made restrictive of his authority. Now, if he was authorized to receive the whole debt, his authority, if not specially limited, would clearly embrace the power to receive a part thereof. (Pickett vs. Bates, 3 La. Ann., 627; Williams vs. Walker, *infra*.)

The fact of the possession of the notes and deed of trust by the attorney, to whose firm they are proven to have been intrusted, was, presumptively, enough to authorize a payment to the possessor of the notes. (2 Greenl. Ev., § 65 ; Owen vs. Bander, 1 Bos. & Pull., 101 ; Cone vs. Brown, 15 Rich., 262 ; Sto. Ag., §§ 98, 104 ; Williams vs. Walker, 2 Sandf. Ch., 325.) And nothing is observed in the evidence to overthrow the ordinary inference deducible from such possession. And it was certainly competent to make a tender of the money to the person to whom its payment would be lawful.

2. If there were any informalities attendant on the act of tendering the money to the attorney, they were clearly waived by his refusal to receive the amount proffered unless the principal note was also paid. (Berthold vs. Reyburn, 37 Mo., 586; 2 Pars. Cont., 645 ; Cole vs. Blake, Peake, 179, cas. cit. ; Bull vs. Parker, 2 Dowl. (N. S.) 345 ; Richardson vs. Jackson, 8 M. & W., 298.)

And the same remarks are applicable to the refusal of the tender by the trustee on the day and place of sale. He was tendered $300 which Curtis had in his hand, who offered

to pay "the interest notes." Reilly refused to receive the money, which was ample in amount to pay the interest as well as all legal costs which had accrued, not on the ground that his costs were not tendered, but because the "principal note" was not also paid.

3. It is objected here that, as the holder of the notes, Cupples, was present at the sale, the tender, if otherwise valid, should have been made to him, and could not be made to the trustee. In respect to this, it is sufficient to say that, although the statute as it formerly stood, (R. C. 1845, § 22) did not admit of the reception of the money by the trustee, yet by subsequent statutes the law has been, it would seem, so changed in this particular, as to make payments to a trustee good. (R. S.,1855, p. 1091, §§ 21, 22 ; Wagn. Stat., 956, §§ 14, 15.) The power of the trustee in this regard, however, is unimportant in consequence of considerations hereafter ad verted to.

4. But it is claimed that the plaintiff has lost the benefit of his tender, by failing to pay the money into court. No objection on this score was made in the court below, and if made, would hardly have been tenable. The proposition is doubtless a correct one when applied to a formal plea of tender in an action at law brought to recover a debt (2 Greenl. Ev., § 600) ; but is scarcely applicable to a case of this kind, where no recovery of money is asked on either side, but equitable relief, on the ground that the sale should not have occurred under the circumstances detailed in the petition, and established by the evidence. And this being a proceeding in equity, will be governed by rules and principles prevalent in those courts where relief of that character is prayed. Among those rules, having application here, is one to be presently mentioned. The true meaning of the rule whose frequency of invocation would seemingly argue a better knowledge of its import, that "he who seeks equity, must do equity" is simply this : that where a complainant comes before a court of conscience invoking its aid, such aid will not be granted except upon equitable terms. These terms will be imposed

" as the price of the decree it gives him." The rule "decides nothing in itself," for you must first inquire what are the equities which the plaintiff must do in order to entitle him to the relief he seeks. (Hanson vs. Keating, 4 Hare. 1 ; Neesom vs. Clarkson, Id., 97 ; Phillips vs. Phillips, 50 Mo., 603 ; Erwin vs. Blake, 8 Pet., 18 ; Sto. Eq. Jur., § 64, and cases cited.) Thus where a husband comes into a court of equity for relief as to any property of his wife, which he claims *jure mariti*, he will be obliged to submit to the terms of the court by making suitable provision for her, or else assistance will be denied him. So also, if a borrower of money on usurious interest seeks the cancellation of the instrument which evidences the debt, equity refuses its aid unless upon the condition that payment be made the lender of what is *bona fide* due him. The above are only a few out of a large number of examples which might be cited in illustration of the rule referred to, which finds its application, not in questions of pleading, nor by what the plaintiff offers to do therein. but in the form and frame of the orders and decrees, both interlocutory and final, whereby equitable terms are imposed as a condition precedent to equitable relief granted.

In Quin vs. Brittain, (1 Hoff. Ch'y, 353) the objection was made, that in the bill (which was substantially a bill to redeem) there was no offer to pay the amount due. But it was held that this was not essential, and the reasons given were, that on such a bill no decree would go for the payment of the amount personally ; that if the amount found due were not paid, there would be a decree for dismission of the bill, which would operate as a foreclosure. (Bishop of Winchester vs. Paine, 11 Vesey, 194.)

And the same theory evidently dictated the decree before us, which requires the payment within thirty days (after the decree or its affirmance) of the two interest notes, and the one which had meanwhile matured, as well as the costs attending the advertisement and sale of the premises in question. Now, if it was not necessary to offer to pay the amount due in the case of Quin vs. Brittain, *supra*, which is anala-

Whelan v. Reilly, et al.

gous to the case at bar, since a decree of dismission here would be attended by similar determinated results, and as the offer to pay in a plea of tender was as essential as the production of the money in court (2 Greenlf. Ev., *supra*) it would seem to follow that the production of the money in court in a cause of this sort, might as readily be dispensed with, and on the same grounds as the offer referred to. In short, as the offer to pay was unnecessary, so also was its accompanying incident, the payment itself into court.

The foregoing considerations clearly indicate how widely variant equitable is from legal procedure, and induce the belief, that whatever the necessity for bringing money into court on a strictly technical plea of tender, where the action looks alone to a mere pecuniary recovery, such necessity has no existence and consequently furnishes no criterion in an instance like the present.

But laying all points of mere technical tender aside, the decree below may well be upheld on the ground of the oppressive conduct of the trustee. He knew the amount of costs due him, and yet, when an amount sufficient to cover them, as well as the matured interest notes, is offered, his lips are sealed, except to refuse the amount offered, unless the principal note was paid. He knew also, if he knew the requirements of his position, that the default in the payment of the interest notes was cured by the sum offered him, and therefore that payment of the $2,000 note should not have been demanded. He was apparently, however, more desirous of pressing than of preventing a sale of the property intrusted to his charge, and seems to have been oblivious to the obligations which evident duty imposed, binding him with equal force to the interests of either party. That duty clearly required that he should have afforded every reasonable facility in order to have had the matter adjusted, and thus have prevented the pending sale. But I will not enlarge on the duties of trustees ; the theme is threadbare.

The judgment is affirmed. Judge Vories absent; the other judges concur.