ELIZABETH REDDISH MILANKO, and LESLIE K. JACOBY, Administrator With the Will Annexed of the Estate of HUBERT A. REDDISH, Deceased, Appellants, v. RICHARD A. AUSTIN, and LULU YOUNG, Duly Appointed, Qualified and Acting Executrix of the Last Will and Testament of TAYLOR R. YOUNG, Deceased, Respondents, No. 42300—241 S. W. (2d) 881.

Division Two, July 9, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, September 10, 1951.

*Frank Mashak* for appellants.

*John H. Lashly* and *Lashly, Lashly & Miller* for respondent Richard A. Austin; *Stephen A. Boggiano* and *Boggiano & Hessel* for respondent Lulu Young, Duly Appointed, Qualified and Acting Executrix of Last Will and Testament of Taylor R. Young, Deceased.

361.

BARRETT, C.—This is a suit in equity to set aside a judgment entered on March 22, 1943 against Hubert A. Reddish on the ground of fraud upon the court in its procurement. Hubert A. Reddish died on July 14, 1944 and the plaintiffs are his administrator and his mother, Elizabeth Reddish Milanko, the principal beneficiary under his will. The defendants are Richard A. Austin and the executrix of the estate of Taylor R. Young. Young and

Austin, lawyers, were plaintiffs and Hubert A. Reddish was the defendant in the action which resulted in the judgment of March 22, 1943. In an interlocutory order the trial court found that Young and Austin in obtaining the judgment failed to call certain matters, particularly a contract which the court thought would have been a valid defense to their action, to the court's attention and that their conduct "constituted a legal fraud upon the court." The court found, however, that Young and Austin were entitled to a one-third interest in whatever Hubert A. Reddish had obtained in settlement of litigation in Illinois and expressly conditioned the granting of the relief prayed for by the plaintiffs—the setting aside of the judgment—upon the plaintiffs likewise "doing equity," by depositing in escrow with the clerk of the court a quitclaim deed conveying to Young and Austin a one-third interest in whatever property Hubert A. Reddish acquired in settlement of the Illinois litigation. The plaintiffs refused to comply with the condition imposed by the court's interlocutory order and because of their refusal the court dismissed the plaintiffs' petition with prejudice and the plaintiffs appeal from that final judgment.

At the outset we are confronted with the respondents' motion to dismiss the appeal or affirm the judgment for the reason that the appellants in disregard of Rule 1.08(a)(3) have failed to specify in their brief or in the points relied on the allegations of error upon which they rely for a reversal of the judgment. The plaintiffs' "Statement Of Errors And Points And Authorities In Support Thereof" consists of a series of abstract statements of law followed by the citation of cases and it is not demonstrated in what manner they are concerned with this case and they do not by any means "specify the allegations of error." Kleinschmidt v. Globe-Democrat Publishing Company, 350 Mo. 250, 165 S. W. (2) 620. This, however, is an equity suit (Beil v. Gaertner, 355 Mo. 617, 626, 197 S. W. (2) 611) which this court is required to try anew upon the record (Gardine v. Cottey, 360 Mo. 681, 230 S. W. (2) 731) and since, as we view the appeal, there is but a single obvious question in the case the motion is overruled. It is the position of the appellants, since the trial court found "legal fraud" in the procurement of the judgment, that the judgment should have been set aside without reservation or restriction. It is obviously their position that the trial court, in the circumstances, abused its discretion, or had no authority, to condition relief upon the plaintiffs' performance of certain acts which the court deemed necessary and appropriate to complete equitable relief.

As briefly as possible, the facts concerning the judgment sought to be set aside and the facts upon this appeal are these: Stephen M. Reddish died in April 1919 owning 1885 acres of land in Jersey County, Illinois. He devised the land in trust, according

to a decree of the Circuit Court of Jersey County, for the benefit of his wife and two sons, Horace and Clarence, and their three children, Hubert, son of Horace, and Paul and Ruth, children of Clarence. After the death of Stephen's wife in 1920 and after the death of Horace in 1938 Hubert claimed, under his grandfather's will, an undivided one half interest in the property and his Uncle Clarence denied that he had any interest. One of the questions was whether Hubert's interest was a vested or a contingent remainder. Uncle Clarence had administered the trust property since his father's death in 1919 and, among other things, had secured the permission of a circuit court to mortgage the property for $42,184.37 to secure sums Clarence had borrowed and expended on the trust property. On February 16, 1938 Hubert A. Reddish entered into a written contract with Young and Austin to represent him in his litigation in Illinois. Among other things, the contract provided that "I further agree to pay the said attorneys, as compensation for their services rendered, and to be rendered, an amount equal to thirty-three and a third percent (33-⅓%) of any amount or of any property realized, collected or secured, either by compromise or by suit." Hubert Reddish was improvident, unreliable and addicted to the excessive use of alcohol, as several courts have found and as Young and Austin alleged on occasion. On February 24th, 1938 Hubert executed a mortgage on a one half interest in his grandfather's land in Illinois to secure Young's and Austin's fee. In April 1938 Young and Austin instituted an action in the United States District Court in Illinois on behalf of Hubert against his Uncle Clarence and all others who might have an interest in the grandfather's land. The general object of the suit was to define Hubert's interest in the land, to partition the land, to challenge the $42,184.37 mortgage and to secure an accounting. The defendants in that action moved to dismiss the petition for lack of jurisdiction but the United States District Court overruled the motion and in a memorandum opinion gave some clue as to the court's tentative view of at least some phases of the litigation. Thereafter, on January 14th, 1939, Hubert, without the knowledge or consent of his attorneys, Young and Austin, went to Illinois and settled his lawsuit. He entered into a written contract with his Uncle Clarence and Clarence's two children. It is not necessary to set out the terms of the contract but it should be objectively noted in passing that as a legal document it is an incomparable masterpiece. The contract construed the will, confirmed the previous conduct of the trustee, continued the trust, provided for certain cash payments to Hubert and provided that a consent decree should be entered in the United States District Court "in conformity with and for the purpose of effectuating and carrying out the provisions of this agreement." Subsequently Austin filed a motion in the United States District Court for the appointment of a next friend or guardian for

Hubert in which he set forth Hubert's settlement with his uncle, that he was incompetent and that the settlement was fraudulent. The District Court found that Hubert understood the agreement and that it was not fraudulently procured and dismissed the amended complaint "as having been fully compromised, settled and adjusted."

In August 1940 Young and Austin instituted an action in the Circuit Court of the City of St. Louis against Hubert Reddish. Their petition set forth, in a general way, the facts up to the filing of the suit, the fact of their fee contract and Hubert's mortgage to secure the fee. They asked that the contract and mortgage be validated, that Hubert's compromise agreement with his uncle be declared invalid, that he be prevented from further aiding the defendants in the Illinois suit and for a personal judgment against Hubert for $30,000. The action was continued from time to time, a default judgment was taken and then set aside, counsel appeared for Hubert and then withdrew and finally the cause was set for trial on February 16, 1942. In the meantime, from January 7, 1942 to June 26, 1943, Hubert was in the military service of the United States. On February 16, 1942 Young and Austin filed an amended petition and, according to the record and the court's minutes, the defendant filed an answer, a general denial signed by the attorney then representing him, Milton F. Napier, and the cause was heard by the court. Young and Austin testified to the contract, the mortgage, their employment and services. The testimony was taken by a court reporter who several years afterwards was unable to accurately transcribe his notes. Because the trial court would not accept several proposed decrees final judgment was not entered until March 22, 1943. The decree finally entered covers thirty-one pages but the substance of it is that a personal judgment was rendered against Hubert for $30,000, the contract and mortgage between Young and Austin and Hubert were declared to be valid and binding and the compromise agreement between Hubert and his uncle was declared to be invalid. This is the judgment that Hubert's mother and administrator seek to set aside in this action on the ground of fraud upon the court in its procurement.

Mrs. Milanko and the administrator rely upon the fact that Hubert was in the military service of the United States and that the Soldiers' and Sailors' Civil Relief Act was not complied with. They claim that Mr. Napier had no authority to appear for Hubert or to file an answer. But the essential facts which the trial court found had been concealed from the court when the judgment of March 22, 1943 was rendered were these: On July 12, 1941, after the settlement in January 1939, Hubert Reddish executed a quitclaim deed by which he conveyed all his interest in his grandfather's property in Illinois to Mr. Napier's secretary. That deed was recorded in Illinois on November 24th, 1941. On the same day Mr. Napier's secretary

quitclaimed a one half interest in the property to Hubert and the other one half interest in the property to Mr. Napier. Those deeds, incidentally, have been set aside and declared invalid by the Illinois courts. Milanko v. Jensen, (1949) 404 Ill. 261, 88 N. E. (2) 857. In any event, on the 16th day of September 1941 Napier, as party of the first part, and Young and Austin, as parties of the second part, entered into a written contract which recites the fact of Stephen Reddish's death in 1919, his will, that under the will "the predecessor in title (Hubert) of the Party of the First Part (Napier) was entitled under said will to an undivided one-half interest in and to all of said lands" and had employed Young and Austin to recover the land for him and had given them a mortgage to secure their fee of $30,000 and "Whereas the Party of the First Part has acquired all the right, title and interest of Hubert A. Reddish in and to the foregoing mentioned described real estate, and all of the parties hereto are desirous of obtaining all that can be obtained by litigation which is necessary to fix the rights of the parties hereto in the Courts of Illinois, and in anticipation of such litigation and in order to avoid any complications or litigation between the parties hereto" it was agreed that Young and Austin should prosecute their suit against Hubert to judgment, foreclose their mortgage and that "the proceeds derived from said foreclosure shall be divided as follows, to-wit: One-third to the Parties of the Second Part (Young and Austin); Two-thirds to the Party of the First Part (Napier)." Mr. Napier testified that he held the quitclaim deed in trust for the protection of and to secure Hubert's interest in the property. In any event when the evidence was given on February 16, 1942 upon which the judgment of March 22nd, 1943 was rendered neither Mr. Napier nor Young nor Austin called the court's attention to the two quitclaim deeds or to their contract with Napier. It was the trial court's view in this case that the contract between Young and Austin and Napier, had it been called to the court's attention, would have been a good defense to their claim to a personal judgment against Hubert and that failure to reveal to the court the existence of the quitclaim deeds and the contract constituted a legal fraud upon the court and entitled the plaintiffs to have the judgment set aside. As we have said, however, the court was also of the opinion that the plaintiffs should likewise do equity and conditioned the setting aside of the judgment upon the plaintiffs conveying to Young and Austin one third of whatever interest Hubert acquired by the Illinois settlement of January 14, 1939.

Mrs. Milanko and Hubert's administrator have briefed and argued numerous questions concerning the conduct of lawyers, fraud and whatnot but all these arguments are entirely beside the point. Mr. Napier is not a party to this suit and his deed has been set aside by the Illinois courts. The trial court found "legal fraud" in the

procurement of the judgment and proposed, by its interlocutory . decree, to set the judgment aside provided, however, that the appellants comply with certain conditions which the court deemed appropriate and necessary to complete equitable relief, and the sole question upon this appeal is whether the trial court had the power to so condition its relief and if so whether the court abused its discretion in imposing the conditions.

For a long time, as a corollary of the auxiliary maxim that he who seeks equity must do equity, courts of equity have granted relief upon such conditions as are just and proper and demanded by the exigencies of the circumstances. Haydon v. St. Louis-S. F. R. Co., 222 Mo. 126, 121 S. W. 15; Gibson v. Shull, 251 Mo. 480, 158 S. W. 322; Jones v. McGonigle, 327 Mo. 457, 37 S. W. (2) 892; Rains v. Moulder, 338 Mo. 275, 90 S. W. (2) 81; Restatement, Judgments, Sec. 130, p. 628; 30 C. J. S., Sec. 602, p. 993; 19 Am. Jur., Sec. 22, p. 51. "The true meaning of the rule whose frequency of invocation would seemingly argue a better knowledge of its import, that 'he who seeks equity, must do equity' is simply this: that where a complainant comes before a court of conscience invoking its aid, such aid will not be granted ▆▆▆ except upon equitable terms. These terms will be imposed 'as the price of the decree it gives him.' " Whelan v. Reilly, 61 Mo. 565, 569-570. More recently the court said, "Certainly no court of equity would grant equitable relief to a party who, on his own part, refused to perform equitably. The enforcement of the principle of equity—he who seeks equity must do equity—is not dependent upon any form of pleading, but its application is in the conditions and provisions of the decree of the court whereby equitable terms are imposed as a condition precedent to the equitable relief granted." Stephenson v. Stephenson, 351 Mo. 8, 17, 171 S. W. (2) 565, 569. In Phillips v. Phillips, 50 Mo. 603, the trial court quieted the title to certain land in the plaintiff but this court, upon its own initiative, conditioned the relief to the plaintiff for the benefit of an infant defendant by imposing conditions similar to those imposed by the trial court in this case. "If the plaintiff shall be willing to protect the rights and interest of his sister's child, we think he is entitled to relief, and the court below should give him judgment upon his making a satisfactory provision for such minor, either by an independent instrument or in the judgment; and if he declines to make such provision he should not be aided in perfecting his title." The rule has been applied and conditions have been imposed in suits to set aside judgments (2 Pomeroy, Equity Jurisprudence, Sec. 393c; 3 Freeman, Judgments, Sec. 1193, p. 2476) especially when, as here, there is an offer to do equity and a prayer by the plaintiffs for general equitable relief and the issue is within the pleadings and inherent in the circumstances. Compare: Howard v. Scott, 225 Mo. 685, 125 S. W. 1158. However, the rule

does not necessarily depend upon the plaintiffs offering to do equity and it does not "require," in the sense of "compel," that the plaintiffs execute and deliver a quitclaim deed. The rule, as correctly applied by the trial court, calls for the granting of the requested relief only after performance by the plaintiffs of the equitable condition imposed by the court. The plaintiffs had their choice whether they would perform the condition which was the price to be paid for the requested equitable relief:

The court had the power to condition its relief to the plaintiffs and the question is whether the court abused its discretion in this instance in so doing. "The rule 'decides nothing in itself," for you must first inquire what are the equities which the plaintiff must do in order to entitle him to the relief he seeks." Whelan v. Reilly, supra. As between the parties, the plaintiffs' predecessor in title, Hubert, on the one hand and the respondents on the other hand, just what are the equities of the situation? It is not necessary to again set forth the facts and characterize the conduct of the parties; the facts speak for themselves. The trial court has found that there was "legal fraud" in connection with the procurement of respondents' judgment. Hubert was indeed a trying client and the respondents performed meritorious services for him. It was due to their labors that he was able to effectuate any kind of a settlement, even one behind their backs and in repudiation of his contract with them. At one time a vested one half interest in his grandfather's estate was worth about $90,000. It does not now appear just what he received in the settlement or its value but whatever it was he and his successors are justly indebted to the respondents and the trial court did not abuse its discretion in conditioning its relief accordingly. Geisberg v. O'Laughlin, 88 Minn. 431, 93 N. W. 310; Overton v. Stevens, 8 Mo. 622. Upon the plaintiffs' refusal to comply with the condition which was reasonable and proper under the circumstances the trial court properly dismissed the plaintiffs' petition.

Accordingly the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.