E. Andrew CARR, Trustee under the Will of William B. Lincoln, Deceased, Appellant,

v.

Marion R. LINCOLN, Respondent.

No. 45090.

Supreme Court of Missouri.

Division No. 2.

Sept. 10, 1956.

 

Irving W. Schwab, Thomas D. Dwyer, Springfield, for appellant.

Neale, Newman, Bradshaw, Freeman & Neale, Flavius B. Freeman, Donald J. Hoy, Springfield, for respondent.

STOCKARD, Commissioner.

In this suit the trustee under the will of William B. Lincoln, deceased, seeks to set aside two deeds whereby the undivided interest of Mr. Lincoln in eleven separate parcels of real estate was purportedly conveyed to a third party and then conveyed back to Mr. Lincoln and his wife. From an adverse judgment plaintiff has appealed. The parties will be designated as in the trial court.

Prior to July 10, 1953, the legal title to an undivided interest in eleven separate tracts of real estate stood in the name of William B. Lincoln. On July 10, 1953, Mr. Lincoln, with his wife joining as grantor, conveyed his undivided interest in the eleven tracts of real estate to Miss M. A. Dunlap, who then conveyed the interest so received to Mr. Lincoln and Marion R. Lincoln as husband and wife. These deeds were not recorded until after the death of Mr. Lincoln which occurred on May 14, 1954.

Mr. Lincoln left a will, dated May 4, 1954, in which he devised to plaintiff in trust for certain specified uses his undivided interest in one of the eleven tracts of real estate described in the two deeds. The other ten tracts were not specifically mentioned in the will, but by the residuary clauses thereof one-half of all remaining property of the testator was devised to his wife, Marion R. Lincoln, and the remaining one-half was devised to the plaintiff to be held in trust for certain other specified uses. If the two warranty deeds are invalid, as plaintiff contends, legal title to the undivided interest of Mr. Lincoln in the one tract of land, and legal title to one-half of the undivided interest of Mr. Lin-

coln in each of the other ten tracts of land, would by reason of the will be vested in plaintiff to be held by him as trustee for the uses specified in the testamentary trust. Defendant contends that the deeds created an estate by the entirety, and that she is now the sole owner of the undivided interest formerly held by her husband in each of the tracts of land.

We need to consider first a motion by defendant to dismiss the appeal for the reason that plaintiff has violated Supreme Court Rule 1.08(a) (3), 42 V.A.M.S., in that the "Points and Authorities" contained in his brief consist only of abstract statements of law and fail to show what actions or rulings of the trial court plaintiff seeks to have reviewed and wherein and why they are claimed to be erroneous, and also for the reason that in violation of Supreme Court Rule 1.08(b) plaintiff's statement of facts is not fair and concise and contains argumentative material.

█ There is no material violation of Rule 1.08(b), but it is true that plaintiff's "Points and Authorities" consist only of a series of abstract statements of law followed by the citation of cases. Plaintiff does not demonstrate in what manner the abstract statements are related to any action or ruling of the trial court. However, this is an equity suit which the court is required to try anew upon the record, and it is readily determinable that there is but the single question in this case of whether there was a "delivery" of the deeds with the intention to create in Mr. Lincoln and the defendant an estate by the entirety. Therefore, the motion is overruled. See Milanko v. Austin, 362 Mo. 357, 241 S.W. 2d 881 [2], certiorari denied 342 U.S. 906, 72 S.Ct. 298, 96 L.Ed. 678.

█ It is not questioned that Mr. Lincoln and the defendant signed the deed in which Miss Dunlap was named grantee and that Miss Dunlap signed the deed in which Mr. Lincoln and the defendant, as husband and wife, were named grantees.

There was evidence to the effect that the notary public did not require that the defendant and Miss Dunlap personally acknowledge to him that they had executed the respective deeds as their free act and deed. However, the notary public testified as to the circumstances of taking the acknowledgments, and the validity of the deeds are not challenged on this appeal because of any claimed fatal defect in the execution. Therefore, by their terms the two deeds created prima facie an estate by the entirety in the interest formerly owned by Mr. Lincoln in each tract of land described therein. Sutorius v. Mayor, 350 Mo. 1235, 170 S.W.2d 387 [5], 171 S.W. 2d 69; Hiatt v. Hiatt, Mo.Sup., 168 S.W. 2d 1087 [5].

Considerable reliance is placed by plaintiff on the testimony of Miss Dunlap concerning certain remarks made by Mr. Lincoln when he asked her to sign the deed in which she was the grantor. Plaintiff contends that this testimony shows that Mr. Lincoln intended that the deeds be effective only until he made his will and that they were then to be destroyed. Insofar as her testimony bears on the question of intent, it is in its entirety as follows:

"Q. Now what, if anything, did Mr. Lincoln say to you at the time he handed you this deed for you to sign, and what did he say while you were signing it, or thereafter, on that occasion? A. Well, he said that he did not have his will fixed just like he wanted it, and he wanted to make Marion safe, so he was making those deeds.

"Q. And did he say how long the deed should be effective? A. No, he did not.

"Q. To refresh your recollection, did he say—what did he say, when the will was prepared, what would be done?

*    *    *    *    *    *

"A. Well, on two or three occasions he just intimated that when the will was made, that the deeds were to be destroyed, or be of no effect.

\* \* \* \* \* \*

"Q. What did he say, or say in substance, on this occasion? A. Well, when he asked me to sign the deed, he said that he wanted to make Marion Lincoln safe until the will was fixed satisfactorily, to his satisfaction.

"Q. Did he say, or say in substance, that which you have just testified to, that at that time, then, he would destroy the deeds? A. (Witness ponders)—Well, not in so many words. But he gave us the impression that that was what he intended.

\* \* \* \* \* \*

"Q. And in view of his having said to you back there along about the time that he executed the deeds, as I understand your testimony, that these deeds were to be effective, or were executed for the purpose of taking care of Marion, or something like that, in the event he died without a will, or some words to that effect,— A. —Yes.

"Q. —did he at the time that he showed you the deeds, and the will, here the 6th day of May, say, 'Now, I am tearing these deeds up, or throwing them away'? A. No, he didn't say anything about that, at all.

"Q. He didn't say anything like that, at all. A. No, sir.

\* \* \* \* \* \*

"Q. Of course, Mr. Lincoln didn't say, as I understood your earlier testimony, Miss Dunlap, that the deeds were to be effective until any certain, particular time, did he? A. No, he did not."

Plaintiff testified that he drew the will for Mr. Lincoln and had several conferences with him concerning its provisions, but that at no time did Mr. Lincoln tell him that he had caused the deeds to be executed or that they were in existence. Mr. Lincoln was part owner of the Lincoln Abstract Company, and the one piece of property specifically mentioned in both the will and the deeds was the land and building in which this business was operated. The will provided that Mr. Lincoln's interest in the abstract business was to be transferred to plaintiff in trust. Over the objection of defendant, plaintiff testified that it was at his suggestion that Mr. Lincoln "agreed to let the Lincoln Abstract real estate go along with the business," and that Mr. Lincoln intended the other ten tracts of land to be disposed of by the residuary clauses of the will. On November 23, 1953 one of the pieces of property described in the deeds was leased to the Graybar Electric Company, Inc., and the lease was signed by Lena Schwab, William B. Lincoln and Lucille Lincoln (Mr. Lincoln's stepmother). Defendant did not sign. Apparently the lease was prepared by Mr. Schwab, plaintiff's attorney, who looked after his mother's interest in the property. There is no evidence that defendant knew anything about this transaction.

Subsequent to the execution of the two deeds Mr. Lincoln signed a check in payment of certain expenses for the repair of the "Graybar property." Another check signed by "Neva Groves" was given in payment of what was testified to be Mr. Lincoln's share of the commission owed to the real estate dealer who negotiated the Graybar lease. Both checks were drawn on the account of the Lincoln Title Insurance Co. It is not disclosed by the record what interest, if any, Mr. Lincoln had in this account, or why the checks were drawn against it when the expense apparently was not that of the title company. As far as is shown by the record, these two items of expense could have been charged by the title company against either Mr. Lincoln or the defendant, or against both jointly.

Two policies of insurance on separate tracts of property described in the deeds

were taken out after the deeds were executed. In each policy the name of the insured was originally listed as "W. B. Lincoln" but by indorsement was changed to "W. B. Lincoln and Lucille Lincoln." However, it is not shown who applied for these policies of insurance or if Mr. Lincoln, Lucille Lincoln or some other person was responsible for this listing.

Miss Dunlap testified that she knew and understood that she was "simply a straw party" to transfer title out of Mr. Lincoln and then to transfer title back to Mr. Lincoln and his wife. After the deeds were executed they remained at Mr. Lincoln's office for a while and then were gone for "months." There is testimony to the effect that at one time the deeds were at the Lincoln home, and defendant produced them at the request of Mr. Lincoln who wanted

to show them to a friend. This friend testified that Mr. Lincoln on several occasions told him about the deeds and said that the deeds "would stand and couldn't be questioned." There is also an inference that at one time Mr. Lincoln obtained possession of the deeds, apparently from defendant, because she "threatened" to record them, and gave them to a friend to keep for a few days. Upon objection of plaintiff, on the basis of the "dead man's statute," defendant was not permitted to testify as to any matter pertaining to the execution and delivery of the deeds.

Following the death of Mr. Lincoln, the deeds were found in a safe deposit box to which he had the sole right of entry during his lifetime. The deeds were in an envelope upon which Mr. Lincoln had made in his own handwriting the following notation:

"Deeds ———:                                                    7/10/53
"1.   W. B. & Marion Lincoln to Dunlap.
"2.   Dunlap to W. B. & Marion Lincoln.
"These deeds have both been delivered to W. B. & Marion Lincoln
                                                    "W. B. Lincoln"

We do not believe that the testimony of Miss Dunlap supports the contention of plaintiff that at the time the deeds were executed Mr. Lincoln did not intend to create an estate in the entirety, or that he intended to limit the effective period of the deeds. The testimony of this witness as to what Mr. Lincoln "intimated" and as to "impressions" she gained as to his intent does not constitute substantial evidence to overcome the intent expressed by the deeds. There is one circumstance which we believe strongly tends to refute the claimed intention on the part of Mr. Lincoln that the deeds were to operate only as a "stopgap" provision for his wife until he executed his will. Miss Dunlap testified that the last time she saw the deeds was "around the 4th of May" 1954. Mr. Lincoln then had the deeds in his possession, and at the same time he showed her his will. At that time he said nothing about "tearing these deeds up, or throwing

them away." Mr. Lincoln obtained entry to his safety deposit box for the last time on May 6, 1954, and he apparently placed the deeds there after his will had been executed.

■ Neither are we impressed by the facts, in the circumstances we have here, that the defendant did not sign the lease and was not named as an insured in the insurance policies, and that after the deeds were executed Mr. Lincoln may have paid the expenses pertaining to one tract. Apparently those who signed the lease and those named as insured in the policies consisted of all the then record owners of the respective tracts of property. There is nothing to show knowledge of these matters on the part of the defendant, and these acts of others are not binding on her. Assuming that the two items of expense in connection with the "Graybar" property were paid by Mr. Lincoln, it is common

knowledge that the husband frequently pays expenses pertaining to property held by the entirety, particularly when, as here, the wife is not engaged in business and occupies the status of a housewife.

In a case strikingly similar to this on the facts, title to nine tracts of land was in the husband. He and his wife conveyed the title to a third person who then conveyed the title back to the husband and wife by the entirety. About two years later, acting apparently upon the theory that he alone had title to all of the tracts, the husband executed a will expressly purporting to devise in trust two of the nine tracts. It was contended that this showed "no intention on his part to create an estate by the entirety," and that the husband claimed the property against his wife. It was held that "(p)roof of an intention to claim when the will was made was not proof that an estate by the entirety was not created by the deeds," and that any statements in the will indicating that the testator still claimed to own the property were not binding on the wife. Sutorious v. Mayor, 350 Mo. 1235, 1244, 170 S.W.2d 387, 391. In that case the deeds had been recorded by the husband, but the wife had no actual knowledge of the deed in which she was named as grantee. The facts of this case do not justify a different rule.

Plaintiff contends that the deeds were never delivered to the defendant and cites several cases to the effect that when an unrecorded deed is found, after the death of the grantor, in a safety deposit box or some other place accessible only to the grantor, a "delivery" will not be presumed. By reason of the factual situation of this case we do not consider these cases to be controlling. Here Mr. Lincoln was one of the grantees in the deed from Miss Dunlap, and even if we treat the two conveyances as constituting but a single transaction whereby title was conveyed from Mr. Lincoln to himself and his wife, he is still one of the grantees. It has been said that "delivery" in its legal sense signifies that all dominion and control over the

deed is passed from the grantor to the grantee, or someone for him, with the intention of presently transferring the ownership of land, or an interest or estate therein. See Klatt v. Wolff, Mo.Sup., 173 S.W.2d 933 [4], and the cases there cited. However, the intention of the parties, particularly that of the grantor, is of the essence of delivery, Chambers v. Chambers, 227 Mo. 262, 127 S.W. 86, 137 Am. St.Rep. 567, and such intention may be manifested by acts or by words, or by both acts and words. Cleary v. Cleary, Mo. Sup., 273 S.W.2d 340 [8]; Klatt v. Wolff, supra [8]; Dallas v. McNutt, 297 Mo. 535, 249 S.W. 35 [4].

The question of whether there was a legal "delivery" depends on the peculiar facts of each case, Van Huff v. Wagner, 315 Mo. 917, 287 S.W. 1038 [1], and all the relevant facts and circumstances shown in evidence should be considered in determining this question, Klatt v. Wolff, supra [2], but in transactions where the grantor is directly or indirectly (as here by reason of the transfer through a third party) one of two named grantees, the circumstances evidencing an intent presently to create the ownership resulting from the whole of the transaction necessarily become more important than those acts which evidence nothing more than physical dominion or control over the deed itself by the person occupying the status of both grantor and grantee. We think that when the husband is the grantor and he and his wife are the grantees and prima facie an estate by the entirety has been created, either by a single deed or by reason of a conveyance through a third party, the fact that the husband retains physical possession of the deed itself is less persuasive of an intent not to have the deed or deeds operative than when the conveyance is from the husband as grantor to the wife alone. Yet the general rule in this latter situation is that while a deed from a husband to a wife must be "delivered," the "delivery may be implied from the circumstances of the case and from the conduct

of the parties, and retention of possession by the husband is insufficient in itself to rebut evidence of delivery." 41 C.J.S., Husband and Wife, § 138.

■■■ The burden of proof of "nondelivery" of a deed is upon the party who seeks to invalidate the deed because of that reason. Klatt v. Wolff, supra [9]; Zumwalt v. Forbis, 349 Mo. 752, 163 S.W.2d 574 [1]. When we take into consideration that this is actually a single transaction involving a third party which prima facie created an estate in the husband and wife by the entirety, and the husband was the grantor to the third party and was one of the grantees from the third party; and when we consider Mr. Lincoln's statements to Miss Dunlap as to the purpose of the transaction, the notation he made on the envelope which contained the deeds, and the statements he made to his friend concerning the deeds after they were executed; and after giving what we believe to be proper consideration to the evidence concerning his attempt to dispose of his interest in one tract by his will (and possibly the other tracts by the residuary clauses) and his exercise of control over the property after the execution of the deeds, we are convinced that at the time the deeds were executed Mr. Lincoln did have the intention to create in himself and his wife an estate by the entirety, and that by both words and acts he effectuated a legal "delivery" to give the instruments force and effect.

The judgment of the trial court is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.